[No. 1073. Decided May 1, 1894.]

ANNIE J. EDSON, *Respondent*, v. ROBERT KNOX, *Appellant*.

CONVEYANCES — DESCRIPTION — CONSTRUCTION — INSUFFICIENT DEED CONSTRUED AS CONTRACT.

Where the description in a conveyance of land can be made certain by reversing the courses from a point referred to in the third call as the southwest corner of the tract to be conveyed and the southeast corner of an adjoining tract, and a consideration of the

description as a whole indicates that such common corner is intended as a controlling point, the deed should be so construed.

Although a deed to lands is not sealed and acknowledged as required by statute, such instrument is sufficient to pass the equitable title of the grantor and those holding under him, and can be maintained as a contract for a deed.

*Appeal from Superior Court, Whatcom County.*

*Bruce & Brown,* for appellant.

*Black & Leaming,* for respondent.

The opinion of the court was delivered by

DUNBAR, C. J. —This is an action brought by respondent to recover the possession of certain real estate situate in Whatcom county.    The land in dispute was originally included within the donation land claim of one Russell V. Peabody, now deceased.    The respondent claims as an heir of the said Russell V. Peabody, and as grantee of the other heirs of said Peabody.    The defenses of the appellant were: (1) A general denial.    (2) A title in himself deraigned through Russell V. Peabody by mesne conveyance.    (3) An equitable counterclaim alleging ownership and possession, and praying that his title be quieted.

A reply was interposed to the affirmative matter in the answer, and the cause was tried by the court without a jury.

With the construction which we give to the deed from Russell V. Peabody to John E. Peabody, dated January 4, 1858, under which appellant claims title, it is not necessary to enter into an investigation of respondent's title, or of the alleged outstanding titles against this land, for if the description in that deed embraces the *locus in quo*, the respondent cannot recover.    The descriptive part of the deed is as follows:

''Commencing at a stone on the beach on the east corner of the bay about three hundred yards south of the mill,

thence running north two hundred and ten rods to a stake and blaze on a tree, thence west eighty-four rods to a stake and blaze fir tree, thence south one hundred and seventy-six rods to a stake forming H. Roeder's S. W. corner on the beach and six rods from the mouth of the little stream Squalicum on my place due west forming my southwest corner, thence along the meanderings of the beach in an easterly direction to the place of beginning, so as to contain seventy-four and $\frac{152}{160}$ acres.''

This case was evidently tried with great care and marked ability by the attorneys on both sides, and evidently at no inconsiderable expense, and this court has entered upon an investigation of the points involved much more exhaustively than the length of this opinion might indicate; but, so far as the construction of this deed is concerned, we have been unable, from a careful investigation of all the authorities cited by counsel on both sides and all others that were available, to obtain much light. They all announce the common and well understood rules that monuments control courses and distances, and that natural monuments are to be given greater consideration than artificial monuments, and many other similar propositions. But these principles, it seems to us, are not applicable to the terms used in the deed in question, and we are, therefore, left to an unaided, common sense construction of the meaning of the instrument. It is true that one natural monument is referred to, viz., the mouth of the little stream Squalicum, but this deed was executed before the corners of the donation claims were established, and it seems to us from a consideration of the whole description that the central idea was that the southeast corner of Roeder's donation claim (mistakenly called the southwest corner) was identical with the grantor's southwest corner, and that it was that common point which was the controlling point, wherever it should be established, and taking that point which is the third call, and reversing the courses,

the deed is made consistent with the theory that the south-
west corner of Peabody's claim and the southeast corner
of Roeder's claim were intended to be identical, and the
true starting point. *Ellinwood v. Stancliff*, 42 Fed. 316.

A deed the description in which commences at a stake
and starts at the southwest corner of the premises intended
to be conveyed, it being the northeast corner of the land
that D. W. deeded to J. W. May 20, 1815, can only be
construed as intending to describe and convey land the
southwest corner of which is identical with the northeast
corner of the tract referred to therein. *Bailey v. White*,
41 N. H. 337.

It is true in this case the beginning point is not at the
southeast corner of Roeder's donation claim, but it detracts
nothing from the importance of that point that it is made
the third call instead of the first.   Had not the southeast
corner of Roeder's donation claim been regarded as of
some importance it would not have been necessary to have
mentioned it at all, but the land would naturally have been
described as so many rods north from the place of begin-
ning, thence so many rods west, thence so many rods south,
and thence along the meanderings of the beach in an east-
erly direction to the place of beginning.

As was said in *Sumner, Adm'r, v. Williams*, 8 Mass. 174:

"A strict, literal and grammatical construction of an in-
strument, in its various parts, taken separately, would
sometimes be absurd, sometimes contradictory, and fre-
quently unjust, because against the manifest intention of
the parties.   But a liberal consideration is to be had of the
whole instrument, in relation to the subject matter, to dis-
cover what was the true intention of the parties."

And construing the descriptions in this deed together, it
seems plain to us that it was the intention of the grantor
to convey the land in dispute.   On the other hand, if the
deed should be so uncertain as to call for extrinsic testi-

mony to ascertain its meaning, the testimony is conclusive in our minds that it was the intention of Russell V. Peabody to convey land adjoining Roeder's claim.

This land was afterward, to wit, on the 26th day of July, 1858, conveyed to William Bausman and William H. Watson by virtue of a power of attorney from John Peabody, and was afterward legally conveyed to appellant. This deed was regular in all respects excepting that it had neither been acknowledged nor recorded. At the time of its execution the statute prescribed that a deed should be in writing, signed and sealed by the party to be bound thereby, witnessed by two witnesses, and acknowledged, and it is urged by respondent that by reason of the absence of these statutory requirements nothing was conveyed. But, even if the purported deed cannot be maintained as a deed, it certainly can be maintained as a contract for a deed, and as the equitable title was conveyed to the grantee, and he took possession under the contract, the grantor, and those holding under him, will now be estopped from asserting his legal title.

It follows, therefore, that in any event the respondent must fail in this case, as under subd. 3, § 195 of the Code of Procedure, the defendant may set forth by answer as many defenses and counterclaims as he may have, whether they be such as have been heretofore denominated legal or equitable, or both, and as appellant has pleaded his equitable right to the land in controversy, and as in our judgment he has all the equities and could compel a title, having proven the deed and taken possession under it, the judgment will be reversed and a new judgment entered here in favor of defendant, appellant here, for costs both in the court below and in this court, and further decreeing that the respondent, Annie J. Edson, has no interest in the property described in the complaint, to wit, lot seven, in block thirty, in the town of Whatcom, now a part of the

city of New Whatcom, State of Washington, and that the title of appellant Robert Knox to said real estate above described is confirmed and quieted.

STILES, ANDERS, HOYT and SCOTT, JJ., concur.