[No. 31128.   Department Two.   January 13, 1950.]

CHARLES P. OCKFEN, *as Administrator, et al., Appellants,* v. JOHN E. OCKFEN *et al., Respondents.*[1]

*Louis J. Muscek,* for appellants.

*Burton W. Lyon, Jr.,* for respondents.

[1]Reported in 213 P. (2d) 614.

HILL, J.—Sophia Ockfen, a widow, then seventy-four years of age and in failing health, signed and thereafter caused to be delivered to her son John E. Ockfen a quitclaim deed to the 160-acre farm on which she lived. The acknowledgment on this deed is regular in form, but the trial court found—and the evidence preponderates in favor of the finding—that she did not appear before or talk to the notary who signed the acknowledgment, although he knew her signature. Less than eight months later, on April 3, 1947, she died.

John did not actually go into possession of the farm until June, after his mother's death, although there is undisputed evidence that, prior to her death, he moved shrubbery from the place where he was living, eleven miles away, apparently preparatory to moving onto the farm. There is no evidence that she ever criticized John for not moving onto the farm or complained because he did not do so.

This is an action by Charles P. Ockfen, as the administrator of his mother's estate and by the four children other than John, asking that the deed to him be canceled and that he be ordered to reconvey the premises to the administrator, and asking for an accounting of the rents, issues, and proceeds of the farm from the date of the mother's death.

The trial judge wrote a memorandum opinion indicating that he would grant the relief requested, on the theory of a constructive trust. Thereafter, he changed his mind and concluded that, if there was a trust, it was an express trust and the evidence offered to establish it was all parol and, hence, within the statute of frauds. Judgment was entered upholding the quitclaim deed and refusing to hold that John E. Ockfen held the property subject to either an express or a constructive trust.

The plaintiffs appealed, and come into this court as appellants with three strings to their bow. The first is the contention that the failure of the mother to appear before the notary and acknowledge her execution of the quitclaim deed renders it invalid. Second is the contention that the mother deeded the property to John in consideration of his

moving onto the farm and taking care of her in her lifetime, and that his failure so to do constituted a failure of consideration. Third is the contention that there was a constructive trust, because it was the mother's desire in making this conveyance that John should hold the property in trust for the other children and John accepted the deed knowing that such was her desire.

■ Appellants' first contention must be decided against them. We have frequently held an unacknowledged deed good as between the grantor and the grantee. *Lynch v. Cade*, 41 Wash. 216, 83 Pac. 118; *Fidelity & Cas. Co. v. Nichols*, 124 Wash. 403, 214 Pac. 820; *Bremner v. Shafer*, 181 Wash. 376, 43 P. (2d) 27. And such a deed is likewise good where the controversy is between the heirs of the grantor and the grantee. *Edson v. Knox*, 8 Wash. 642, 36 Pac. 698; *In re Deaver's Estate*, 151 Wash. 454, 276 Pac. 296; 1 C. J. S. 780, Acknowledgments, § 6.

The appellants' second and third contentions are not consistent one with the other. We do not understand how with one breath they can urge that the property was deeded to John in consideration of his moving onto the place and taking care of his mother, and that the deed should be canceled for a failure of consideration, and with the next breath urge that the property was deeded to him to avoid the expense of probate proceedings, with the understanding that he would hold it in trust for all the children. Incidentally, neither of these contentions is consistent with their complaint, which flatly and definitely alleges an express trust, *i.e.*, that the mother at the time of the conveyance to John instructed and directed him to hold the property

". . . for the benefit and use of all her children . . . , and upon her demise, . . . to immediately convert the same into lawful money and equally divide the proceeds thereof among all the children, share and share alike."

Be that as it may, the evidence offered by the appellants did not establish either the allegations of the complaint or their present contentions.

The trial court found, and we are in entire accord, that the

" . . . quit claim deed was given by Sophia Ockfen, now deceased, to John E. Ockfen's daughter, Shirley, and was taken home by her and delivered to her father, John E. Ockfen, in accordance with Sophia Ockfen's instructions; that John E. Ockfen had no part in the preparation or execution of said deed, and there is no evidence that he knew it was being prepared and drawn before it was delivered to him";

and that the quitclaim deed was prepared

" . . . without solicitation on the part of John E. Ockfen; that there was no evidence that she [Sophia Ockfen] was induced so to do by any oral promises on the part of John E. Ockfen . . . ; that there was no evidence produced at the trial of the above entitled action wherein the defendant [respondent], John E. Ockfen, agreed with his mother to do anything regarding the above described real property. . . ."

■ The most that can be said to be established by the appellants in support of the failure of consideration theory is that their mother hoped that John would move onto the place, and that John did not do so.

The most that can be said to be established by the appellants in support of their constructive trust theory is (1) that the mother had an equal affection for all of her children, that she conveyed two unimproved city lots to her son Albert and transferred a bank account to her son Charles on certain express trusts for the benefit of all the children, and that this comprised all of her property except the farm which she deeded to John (from this it might be inferred that the conveyance to him was also in trust for a similar purpose); and (2) that, some months after the quitclaim deed was delivered and while the mother was still alive, John told his brothers that he did not want any more of the property than the rest of the children, and that he would hold it in trust and they would sell the place and divide the proceeds. (John testified that what he said was that if he sold the place he would divide the proceeds with the other children.)

The inference referred to in (1) has to be weighed against express statements made by Sophia Ockfen to a granddaughter who lived with her for nineteen years and until three weeks before her death, and to others outside the family, that she wanted John to have the farm.

The promise which John is alleged to have made his two brothers in the conversation referred to was subsequent to the execution of the deed, and is important only to the extent that (a) it might cast some light on the understanding between the mother and John, if any there was, at the time of the delivery of the deed; or (b) it might be the basis of an estoppel if the brothers claimed that, in reliance thereon, they made no effort to have the deed set aside in their mother's lifetime. No claim of such estoppel is made.

■■ The briefs discussed at some length the requisites of a constructive trust, and whether or not there can be a constructive trust in the absence of some element of positive fraud by the grantee in obtaining the title. We feel that it is unnecessary to discuss that question in the present case, because the appellants have not sustained the burden of proving facts sufficient to justify the imposing of a constructive trust on any theory.

We may accept, for the purposes of this case, the statement of Judge Cardozo in *Beatty v. Guggenheim Exploration Co.,* 225 N. Y. 380, 386, 122 N. E. 378, 380:

"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee."

But, as we said in *Raymond v. MacFadden,* 21 Wn. (2d) 328, 344, 150 P. (2d) 829, after using the foregoing quotation:

"But before equity will declare that one who has legally acquired a thing must hold it for the benefit of another, the evidence that the defendant has breached a trust and confidence which that other had a right to repose in him must be clear and convincing, and the breach of such a nature as to shock the judicial conscience. It follows, of course, that each individual case is governed by its own facts."

The evidence on behalf of John E. Ockfen is that he was frequently at his mother's home, that he cut all the wood that was used there and performed other chores, and rendered more service to his mother than did any of the other children except her daughter Alma, and that only he, of all the children, did not own a home of his own. The only disinterested witnesses in the case, including a daughter of one of the appellants who, as we have heretofore indicated, lived with her grandmother (Sophia Ockfen) until just before her death, testified that her grandmother had repeatedly said that she wanted John to have the farm.

If the preponderance of the evidence does not establish a gift, and we think it does, the appellants' evidence that the respondent has breached a trust and confidence which they or their mother had a right to repose in him, is neither clear nor convincing; in short, after careful consideration of all the evidence, the "judicial conscience" of this court is not shocked. The judgment is affirmed.

SIMPSON, C. J., ROBINSON, MALLERY, and HAMLEY, JJ., concur.