IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ONEWEST BANK, FSB, its successors in interest and/or assigns, | ) ) ) ) | No. 31944-0-III |
| Respondent, | ) ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| MAUREEN M. ERICKSON, | ) ) | |
| Appellant, | ) ) ) | |
| PALISADES COLLECTION LLC, ASSIGNEE OF AT&T; GONZAGA PREPARATORY SCHOOL, INC.; SOCIETY OF JESUS OREGON PROVINCE; JOHN TRAYNOR AND JANE DOE TRAYNOR, individually and marital community if any; ALBERT FAULKNER AND JANE DOE FAULKNER, individually and marital community if any; PHIL MCLEAN AND JANE DOE MCLEAN, husband and wife; LARRY SMITH AND JANE DOE SMITH, individually and marital community if any; KEVIN R. MALONE AND CHRISTINE MALONE, individually and marital community if any; OCCUPANTS OF THE PREMISES; QUALCHAN HILLS HOMEOWNERS' ASSOCIATION; and any persons or parties claiming to have any right, title, estate, lien or interest in the real property described in the complaint, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

FEARING, J. — We address the unique circumstance of an Idaho court authorizing an Idaho conservator to encumber a Washington residence. Following established principles from the hoary past concerning state jurisdiction over real property, we hold that the Idaho court lacked jurisdiction and that the order authorizing the encumbrance is invalid.

Plaintiff OneWest Bank FSB seeks to judicially foreclose upon a deed of trust purportedly encumbering a Spokane home. A conservator appointed by an Idaho court signed the deed of trust on behalf of the home's owner or former owner, Bill McKee. McKee's daughter, defendant Maureen Erickson, challenges the deed of trust as invalid and she appeals a summary judgment order enforcing and foreclosing on the instrument. We reverse the summary judgment order and grant Erickson a dismissal of the complaint.

## FACTS

Bill McKee had three children, Jerome McKee, Craig McKee, and Maureen Erickson. Bill and his wife, Erickson's mother, acquired property in Canada, Idaho, and Washington. Erickson's mother died in 1994, leaving her daughter by will "all of her one-half of the community property owned by her and [Bill McKee]." Clerk's Papers (CP) at 124. Bill McKee hid the will from Maureen Erickson. McKee later explained to Erickson that he did not desire to take property from her that her mother intended she have, but he wanted to maintain control over all of the marital couple's combined estate and properties.

2

In 1997, a driver rear-ended Maureen Erickson at a high speed, rupturing several discs in her back. Erickson and her three sons moved from California to Spokane later that year to be near Bill McKee. Bill McKee lived in Idaho at that time.

Maureen Erickson underwent back surgery in 2000. With Erickson distracted by her surgery, Jerome McKee traveled from Louisiana to visit his father, Bill McKee, in Idaho. Jerome convinced his father to sell property in Canada and entrust him with the proceeds as a means of avoiding United States taxes. Under her mother's will, Maureen Erickson would have owned an interest in the property and would have been entitled to some of the sales proceeds. McKee obliged Jerome. Bill McKee later repeatedly asked Jerome to return the money, but Jerome refused.

In 2001, with Maureen Erickson's financial assistance, Bill McKee purchased a home in Spokane, at 4702 South Pender Lane. This foreclosure action concerns the residence. McKee initially lived in the home half of the time. Erickson and her three sons lived there full time. McKee and Erickson planned for Erickson to eventually own the home, and Erickson made the mortgage payments. Erickson and her sons cared for the home.

In 2004, Maureen Erickson underwent another back surgery, after another car collision. In 2005, Erickson discovered her mother's will in Bill McKee's safety deposit box. By January 2007, Maureen Erickson's health improved. Bill McKee, who had recently turned 90 years old, began residing year round in the Spokane residence with

3

Erickson and his three grandchildren. McKee lived with Erickson in the South Pender Lane home the rest of his life. He did not reside even temporarily in Idaho after January 2007.

Bill McKee anticipated undergoing heart surgery, and he sought to qualify for Medicaid payments. McKee and Maureen Erickson sought legal advice from attorney Richard Sayre. Sayre astutely advised Erickson to sue her father for failing to deliver her share of her mother's assets, upon the mother's death. According to Sayre, McKee could settle the suit by transferring assets to Erickson and then qualify for Medicaid. Bill McKee was receptive to the recommendation because he knew he had wronged his daughter. Maureen Erickson sued her father in Spokane County Superior Court, and, in turn, Bill McKee transferred assets, including the Spokane residence, to Erickson to satisfy the claim. McKee transferred the Spokane home in January 2007 and completed other transfers in February 2007. After a lengthy review of the transfers, Medicaid declared them valid and qualified Bill McKee for Medicaid payments.

In response to the transfers from Bill McKee to Maureen Erickson, McKee's son, Jerome, filed suit in the Shoshone County, Idaho, District Court. Jerome McKee asked that the Idaho court appoint him as his father's guardian or, in the alternative, appoint someone else as Bill's conservator. Bill McKee appeared in the suit through counsel and informed the Idaho court that he resided in Washington. Maureen Erickson may have attended one or more hearings, but the extent of her involvement is not clear. She was

4

not a party to the conservatorship action. According to Erickson, the court viewed her

negatively because of the property transfers from Bill McKee to her. Trial for the Idaho

proceeding spanned three nonconsecutive days, with the first day of trial being May 31,

2007.

Physicians scheduled Bill McKee's heart surgery for July 3, 2007. As McKee

prepared for surgery, Maureen Erickson and he looked for but could not find the deed he

executed in January to transfer the Spokane home. On June 28, 2007, McKee again

conveyed the property to Erickson by quitclaim deed. Erickson did not immediately

record this deed.

On July 2, 2007, the Shoshone County, Idaho, District Court, at the request of

Jerome McKee, signed an order enjoining Bill McKee's heart surgery. Doctors believed

Bill McKee would not survive without surgery, and McKee underwent open heart

surgery at Spokane's Deaconess Hospital anyway on July 3. After surgery, McKee

recovered at the South Pender Lane, Spokane, residence with the care of Maureen

Erickson.

The Idaho District Court conservatorship trial resumed on July 10 and July 12,

2007. Bill McKee could not participate in the Idaho proceedings as he recovered from

heart surgery. Maureen Erickson later declared:

> At that time, my father was 90 years old, had recently undergone open heart surgery, was extremely hard of hearing, and occasionally had difficulties with his eyesight, but he was certainly not incompetent. His

doctors wrote affidavits to the court saying he was competent. There were telephone proceedings that I vaguely recall, with my recollection being that nothing I said seemed to matter or help and that my father could not participate because he could not hear what anyone said.

CP at 130.

On August 22, 2007, the Spokane County Superior Court dismissed, without entering a judgment, Maureen Erickson's action for fraud against Bill McKee, for his hiding Erickson's mother's will. On August 27, 2007, the Idaho District Court signed "Letters of Conservatorship" appointing Shelley Bruna, dba Idaho Fiduciary Services, as conservator for Bill McKee. CP at 18. The letters do not declare Bill McKee to be an Idaho resident.

On September 10, 2007, Bill McKee faxed a handwritten letter to his attorney "to make sure that the judge [in Idaho] was told that [he] lived in Washington and that he had given the Property to [Maureen Erickson] for taking care of him for years and because he had hid [Erickson's] mother's will." CP at 130. Jerome McKee filed the "Letters of Conservatorship" from the Idaho proceeding with Spokane County on September 18, 2007. CP at 17. On September 24, 2007, the Idaho court entered an order granting Jerome's petition to appoint Shelley Bruna as Bill McKee's conservator. We do not know why the letters of conservatorship were issued 28 days before the signing of the appointment order. The order does not declare Bill McKee to be an Idaho resident.

By late September 2007, Bill McKee's and Maureen Erickson's Spokane home

6

faced foreclosure. To save the home, the father and daughter sought refinancing. Shelley

Bruna meanwhile sought to procure a reverse mortgage for the home. Maureen Erickson

declared:

> By September 2007, it became apparent that Ms. Bruna was attempting to assert control over the Property. At that time, I had been working with three different mortgage lenders to attempt to work on a mortgage for the Property. In mid-September, I was advised by one of the mortgage brokers that Ms. Bruna had instructed him not to talk to me anymore and he stopped communicating with me. I also had contact with the mortgage broker Ms. Bruna ultimately dealt with, John Tenold, mid-September. I informed him that my father had transferred the Property to me and that I held a deed. At about the same time I was informed by the other mortgage broker that I had been dealing with that Ms. Bruna instructed him not to talk to me, Mr. Tenold advised me that Ms. Bruna, as the conservator, was the only one he would deal with or allow to sign any loan. It was apparent to me she had convinced the potential mortgage lenders that my father's transfer of the Property to me was not valid. However, I am not aware of any request made to, or order issued by, any court that provided that.
>
> I certainly did not want Ms. Bruna to be involved in getting any mortgage loan on the Property. . . . Ms. Bruna's actions, and the lenders' responses, eventually eliminated any other loan possibility. At the very end of the process, after I had been shut out of negotiations, Ms. Bruna drove home the point that she was in control by threatening to stop all effort to get any mortgage and let the Property be in my name. By that time, it was too late. The Property was in foreclosure and would have been lost. In large part because of that threat, I stayed out of the dealings as Ms. Bruna and the lender obviously did not want my involvement.

CP at 129-30.

On October 22, 2007, the Idaho District Court directed conservator Shelley Bruna

to "facilitate a reverse mortgage" on the property and to enter a reverse mortgage with

Quick Mortgage on the Spokane home. CP at 108. The order indicates that Maureen

7

Erickson "read and approved" it, and seems to bear her signature. CP at 111. Erickson later declared, "I do not recall seeing or signing any court order from those proceedings." CP at 131. Bill McKee's attorneys, Jack Rose and Lloyd Herman, signed the order. The order directing Shelley Bruna to sign the reverse mortgage does not identify Bill McKee as a resident of Idaho.

On October 24, 2007, Maureen Erickson gave Bill McKee $1,750 "to be applied toward the purchase of the property." CP at 165. The transfer of funds was memorialized in a "gift letter." CP at 165. That same day, Shelley Bruna wrote Jack Tenold of Quick Mortgage that "[a]s Conservator for Bill E. McKee, I will be delivering the sum of $1,700.00 to Gustafson and Hogan Trust Account from Mr. McKee's bank account for the closing of a reverse mortgage." CP at 166.

On October 25, 2007, Shelley Bruna, as conservator of Bill McKee, signed a $398,587.65 Mortgage Adjustable Rate Note in favor of Financial Freedom Senior Funding Corporation, a subsidiary of IndyMac Bank FSB. The initial interest rate was 8.375 percent, but the amount would be monthly adjusted as long as the rate never exceeded 20.375 percent. Shelley Bruna, as conservator of Bill McKee, also signed a deed of trust on the Spokane residence, which deed secured the note. The deed of trust was in the nature of a reverse mortgage, and we will refer to the instrument hereafter as a "reverse mortgage." Paragraph five of the reverse mortgage included a covenant that Bill McKee would "at all times occupy, establish, and use the" home as his "principal

8

residence." CP at 39. Like other reverse mortgages, no amount was payable to the

lender until the death of Bill McKee, unless he earlier conveyed or vacated the home.

Upon closing, $255,460.44 was paid to the prior mortgage holder. Financial Freedom's

vice president indorsed in blank the Mortgage Adjustable Rate Note.

Maureen Erickson testified by affidavit:

> I did not know, and still do not know, how much equity [Shelley Bruna] withdrew in cash from the Property to divert to other things, such as her expenses. The reverse mortgage option was the absolutely worst possible alternative and not what my father or I wanted. It was far more expensive and carried a much higher interest rate than any other loan.

CP at 129.

On appeal, Maureen Erickson argues that Financial Freedom had actual or

constructive knowledge that she owned the property at the time Shelley Bruna signed the

reverse mortgage. Erickson declared in response to OneWest Bank's summary judgment

motion:

> Except for the disclosure I made to the mortgage brokers, in early to mid-September 2007, including Mr. Tenold, no one from the lender Ms. Bruna eventually dealt with talked to my father or me regarding ownership of the Property. No one discussed anything further with either of us regarding the fact that he resided in Washington, not Idaho, at the time my brother initiated guardianship proceedings against him. My father and I both lived at the Property. Either of us were able to confirm that the Property belonged to me. If asked, I would have confirmed this truth. Based on what I knew of my father and his September 2007 note for Judge McFadden, I am confident that if anyone had asked my father about ownership of the Property he would have confirmed it had been transferred to me.

9

CP at 131.

On January 28, 2008, the Spokane County Superior Court entered judgment in Maureen Erickson's suit against Bill McKee for hiding her mother's will. The Washington court noted that its August 22, 2007 "dismissal was signed without a formal judgment being entered beforehand. This stipulated motion is to correct the record nunc pro tunc." CP at 19. The judgment retroactively awarded Erickson multiple properties, including the South Pender Lane home.

Maureen Erickson later declared:

25.     In February 2008, after my father had resided full time in Washington for over a year, Ms. Bruna refused to give my father any of his money for dentures. Attorney Lloyd Herman [Bill McKee's attorney throughout] had [Bill's] doctors write letters to Ms. Bruna demanding money for dentures, explaining that he was losing weight without them. She would only give him $400.00 to $550.00 a month to live on. My adopted brother, Craig McKee, then assisted by conservator Bruna, along with my brother Jerry, filed for an emergency guardianship with Judge McFadden in Idaho saying he was wasting away because I wasn't caring for him. Judge McFadden then issued a warrant to take my father forcefully from his home in Spokane.

26.     Mr. Herman went to court in Spokane that day and got a restraining order against my brother, Jerome McKee, and his wife Mina McKee; my adopted brother, Craig McKee and his wife Sylvia McKee; and the Honorable Judge McFadden [the Idaho District Court judge]. The Washington court granted a guardianship in Washington, which was still not necessary because he was never ruled incompetent. I was named as my father's guardian so I could prevent my brothers from further terrifying or kidnapping him. In about 2009, my son Garth was named in Washington as guardian of my father's finances to again fight my brothers (who were fighting my guardianship in Washington and saying my father needed a guardian of his finances). Judge Sypolt left permanently in place the

10

restraining order against all the same parties, and denied my brothers'
motion to have them lifted.

27.     Proceedings to attempt to remove Ms. Shelly [sic] Bruna as
my father's conservator were also renewed in early 2008 when it was
determined that she had never posted a bond as required by Judge
McFadden in connection with her having been appointed as conservator of
his property.  In February 2008, my father wrote a letter directly to Judge
McFadden reinforcing his opinions about Ms. Bruna, his unhappiness that
she had been appointed as a conservator for his property, and his opinions
of what a poor job she was doing.

CP at 131-32.

On February 26, 2008, at age 92, Bill McKee wrote to the Idaho District Court

judge:

> I lived in Idaho for forty years.  I don't ever intend to go back except
> to visit Maureen and her boys at Priest Lake.  By the fact this trial went
> forward was a huge embarrassment to me.
>
> The government has no damned business in my life.  I am
> competent.  I chose my Powers of Attorney for when I am not.
>
> Who would believe that in this country a complete stranger could
> take my entire Social Security and retirement and refuse to give me enough
> money for food and teeth.
>
> Jerry and Craig are trying to use your court to undermine my right to
> have transferred that property to Maureen.  I was competent and my
> attorney Peacock help[ed] me with the transfer in January last year.
>
> Ask Jerry [i.e., Jerome] and Craig if they would like to be my
> guardian if they have to promise to leave Maureen and her property alone.
>
> Craig has not called me once or come to see me since my heart
> surgery last July.
>
> I am going to live with my daughter.  She has such a good
> disposition and takes really good care of me and my dog.  I have already
> chosen a retirement home in Seattle for when necessary.
>
> I don't have long to live and would like to have some peace in my
> life.  I would rather be dead than have either Jerry or Craig toss me around
> or take me away from [my] daughter and her boys.

11

> I want you to get rid of that women [sic] who is stealing from me and trying to steal from Maureen. I don't trust her and she has caused me to suffer. Besides I live in Washington. She bounces more checks than I do. She has made my life hell.
>
> Sincerely,
>
> Bill E. McKee

CP at 142-44.

On June 20, 2008, the Idaho court terminated the conservatorship of Bill McKee "pursuant to the suggestion of the Washington court" and ordered Shelley Bruna "to turn over all funds belonging to Bill McKee to his attorney, Lloyd A. Herman." CP at 145.

On September 25, 2009, Freedom Financial assigned the deed of trust and mortgage note to Mortgage Electronic Registration Systems, Inc. (MERS). Freedom Financial recorded the assignment with Spokane County on October 2, 2009.

Bill McKee died on March 12, 2011, at age 94. The death certificate lists the causes of death as "failure to thrive" spanning one month and "dementia" spanning "years." CP at 51. The note, secured by the reverse mortgage, then fell due in full.

On April 13, 2011, Maureen Erickson sent Freedom Financial a proposed loan repayment schedule. In that proposal, Erickson wrote, "I am in the process of contacting a realtor to list property," and she indicated that the loan would be repaid "[f]rom proceeds of the sale of the property." CP at 153. On September 9, 2011, Maureen Erickson asked Freedom Financial for additional time to pay the loan. The due date was

extended to December 12, 2011.

On December 8, 2011, Maureen Erickson recorded the June 28, 2007 quitclaim deed signed by her father and transferring the Spokane residence to her with the Spokane County. On December 9, 2011, Erickson wrote Freedom Financial to request a second extension in payment. OneWest denied the request.

On January 27, 2012, MERS assigned to OneWest the deed of trust, but not the note. OneWest recorded this assignment with Spokane County on February 3, 2012.

PROCEDURE BELOW

On March 8, 2012, OneWest brought suit in Spokane County Superior Court to foreclose upon the Spokane residence. Maureen Erickson had a recorded interest in the property because of her filing of the judgment against her father and the recorded deed. Therefore, OneWest included Maureen Erickson as a defendant in its suit.

In its complaint, OneWest Bank asserts an interest in the South Pender Lane home only by reason of the reverse mortgage. In its complaint, OneWest Bank asks for a money judgment against "the [d]efendants." CP at 201. Elsewhere in the complaint, OneWest Bank asks "that no deficiency judgment be entered against the defendants." CP at 202. In its complaint, OneWest Bank asserts no claim against Maureen Erickson other than to have its interest in the property be declared first in priority over Erickson's interest in the property.

13

On May 22, 2013, OneWest moved for summary judgment. Rudy Lara, an agent of OneWest, attached five exhibits to a declaration supporting the motion: the note, the deed of trust, the assignment from Freedom Financial to MERS, the assignment from MERS to OneWest, and Bill McKee's death certificate.

Maureen Erickson opposed OneWest's motion for summary judgment and asked the trial court to grant her judgment removing the lien of the deed of trust from the title to the South Pender Lane residence. Erickson argued: the deed of trust's acknowledgement was deficient, OneWest is not the note holder, the Idaho conservatorship did not extend to real property in Washington, and OneWest was not a bona fide purchaser of the mortgage. On June 20, 2013, OneWest filed a declaration of legal counsel Babak Shamsi. Shamsi attached a copy of the Idaho court orders. He stated that he attempted to obtain an authenticated copy of the order from the Idaho court, but the court clerk refused on the ground the file was sealed. He obtained the copies of the orders from Jerome McKee's Idaho lawyer.

On July 2, 2013, the trial court granted OneWest's motion for summary judgment in part. The trial court concluded as a matter of law that OneWest holds the note and the deed of trust was properly acknowledged. Although Maureen Erickson did not formally move for summary judgment, the trial court formally denied Erickson's motion for summary judgment on the two issues.

14

On August 2, 2013, OneWest filed a second affidavit from Rudy Lara. In this affidavit, Lara declared:

> In the regular performance of my job functions, I am familiar with business records maintained by OneWest for the purpose of servicing mortgage loans. These records (which include data compilations, electronically imaged documents, and others) are made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the course of business activity conducted regularly by OneWest. It is the regular practice of OneWest's mortgage servicing business to make these records. In connection with making this Affidavit, I have personally examined the business records relating to the subject "reverse mortgage" loan.
>
> . . . .
>
> Prior to its recording on December 8, 2011, Plaintiff has no record or knowledge of the presence of the unrecorded quit claim [sic] deed transferring the interest in the property.

CP at 151. Lara's second affidavit provided the foundation for: the April 13, 2011 repayment schedule; Maureen Erickson's first request for an extension; Erickson's second request for an extension; Erickson's October 24, 2007 gift memorandum of $1,750 to Bill McKee; a letter from Shelley Bruna to Realtor Jack Tenold; and the U.S. Department of Housing and Urban Development settlement statement for the closing of the Freedom Financial loan.

On August 7, 2013, Maureen Erickson moved to strike OneWest's exhibits as not authenticated and lacking foundation. On August 16, 2013, the trial court denied Maureen Erickson's motion to strike and granted OneWest summary judgment, writing:

> As to Defendant's Motions to Strike the Idaho Court Order (Exhibit

15

A to Mr. Shamsi's third Declaration), said motion is denied. There are justifiable reasons for not being able to authenticate the Order, as the Idaho court file is sealed. There are sufficient indicia of authenticity, and the Order is admissible as a business record. The records are capable of being authenticated. In the alternative, even if the Idaho Order should be stricken due to lack of authenticity per RCW 5.44.010, said Order is not critical to this Court's determination of this matter, and this Court would have reached the same conclusion without consideration of the Idaho Order.

As to Defendant's Motion to Strike all exhibits attached to Plaintiff's (Rudy Lara) Affidavit number 2, is denied. Said exhibits are business records, and there is sufficient indicia of reliability. Further, the documents are capable of being authenticated, albeit at significant effort and expense. In the alternative, if those exhibits should be stricken, this Court would have reached the same conclusion. They are not critical to the result.

. . . .

The Court having reviewed the pleadings and other records and files herein, and having considered the arguments of counsel, the Court finds that no material issues of fact exist which would preclude the granting of Plaintiff's Motion for Summary Judgment, and the Plaintiff is entitled to judgment as a matter of law.

OneWest is a *bona fide* purchaser for value.

Defendant took title to the property subject to Plaintiff's Deed of Trust.

CP at 188-89.

## LAW AND ANALYSIS

Maureen Erickson asserts numerous trial court errors on appeal and she asks that the summary judgment order in favor of OneWest be reversed. She argues (1) the trial court relied on inadmissible evidence, (2) Freedom Financial's deed of trust was not properly notarized and thus failed to attach to the property, (3) OneWest failed to prove it holds the note and cannot foreclose on the deed of trust alone, and (4) Shelley Bruna lacked the authority to encumber property that Bill McKee no longer owned, because (a)

16

Idaho law does not authorize a conservator for a nonresident to encumber real property outside the state of Idaho, (b) Financial Freedom had actual or constructive knowledge that Maureen Erickson owned the property, and (c) OneWest's interest in the property is not superior to Financial Freedom's since OneWest was not a bona fide purchaser. We agree that the Idaho court lacked authority to authorize a conservator to encumber the Spokane residence and reverse on this ground. Therefore, we do not address Erickson's other arguments.

Maureen Erickson argues that Shelley Bruna, as an Idaho appointed conservator for a nonresident, lacked the authority to encumber real property in Washington. Under Idaho's version of the Uniform Probate Code, an Idaho court may appoint a conservator "in relation to the estate and affairs of a person . . . that . . . is unable to manage his property and affairs effectively for reasons such as . . . mental disability, physical illness or disability . . . and . . . the person has property [that] will be wasted or dissipated unless proper management is provided." I.C. § 15-5-401(b). In support of her argument, Erickson cites I.C. § 15-1-301, titled "Territorial application," a provision applicable to the entire Probate Code:

> Except as otherwise provided in this code, this code applies to (1) the affairs and estates of decedents, missing persons, and persons to be protected, domiciled in this state, (2) *the property of nonresidents located in this state or property coming into the control of a fiduciary who is subject to the laws of this state*, (3) incapacitated persons and minors in this state, (4) survivorship and related accounts in this state, and (5) trusts subject to administration in this state.

17

(Emphasis added.) By its plain language, I.C. § 15-1-301 limits an Idaho conservatorship for a nonresident to property located in that state.

The undisputed facts show that Bill McKee established his domicile or residency in Washington State by January 2007. Conversely, OneWest Bank presents no testimony showing McKee to be a domiciliary of Idaho on August 27, 2007, when the Idaho court appointed Shelley Bruna as McKee's conservator, or on October 24, 2007, when the Idaho court authorized the encumbrance on the Spokane residence. To the contrary, the reverse mortgage, upon which the bank relies, declared that Bill McKee's principal residence was the South Pender Lane, Spokane, property. The note would fall due if McKee no longer occupied the home. Under the Idaho statute, the Gem state court could appoint a conservator over Bill McKee, but the conservator's authority to manage and encumber property was limited to real property situated in Idaho. Conversely, conservator Shelley Bruna's powers did not extend to the South Pender Lane home.

OneWest Bank emphasizes that portion of Idaho Code § 15-1-301 that applies Idaho's Uniform Probate Code to "property coming into the control of a fiduciary who is subject to the laws of this state." The bank contends that Shelley Bruna, as a conservator, was a fiduciary and the South Pender Lane residence came under her control. This is a circular argument, because we must first decide whether the Spokane residence came under her control.

18

OneWest Bank insists that Shelley Bruna's Idaho conservatorship powers extended to foreign land because of the language of other Idaho statutes. OneWest cites I.C. § 15-5-420 and § 15-5-424. I.C. § 15-5-420 provides in part, "The appointment of a conservator vests in him title as trustee to *all* property of the protected person, presently held or thereafter acquired." (Emphasis added.) And I.C. § 15-5-424 provides:

> (3) A conservator, acting reasonably in efforts to accomplish the purpose for which he was appointed, may act without court authorization or confirmation to:
>
> . . . .
>
> (g) Acquire or dispose of an estate asset *including land in another state* for cash or on credit, at public or private sale; and to manage, develop, improve, exchange, partition, change the character of or abandon an estate asset.

(Emphasis added.) We recognize that I.C. § 15-5-424(3)(g) read literally bestows power to transfer land in Washington State. This argument, however, ignores the jurisdictional nature of I.C. § 15-1-301. If I.C. § 15-1-301 is not satisfied, then the Idaho court lacked statutory authority over the action to entrust Shelley Bruna with the powers I.C. § 15-5-420 and § 15-5-424 enumerate. I.C. § 15-1-301 is the jurisdictional statute that encompasses all Idaho probate provisions. No Idaho decision addresses I.C. § 15-5-424(3)(g) and no decision holds that an Idaho court has authority to impact or approve a mortgage on Washington land.

Even if Idaho law authorized the Idaho courts to approve a mortgage on property in Washington State, we would rule to the contrary, because we are not bound by a

19

foreign state's order concerning property here. *See Olympia Mining & Milling Co. v. Kerns*, 64 Wash. 545, 551, 117 P. 260 (1911) (collecting hoary rhetoric). Even if Bill McKee was a resident of Idaho at the time of the encumbrance, we would conclude that the Idaho order authorizing the mortgage is invalid. Historically the laws of the place, where such real property lies, exclusively govern in respect to the rights of the parties, the modes of transfer, and the solemnities, which should accompany them. JOSEPH STORY, COMMENTARIES ON THE CONFLICT OF LAWS § 424 (1834). Thus, the local forum is the ultimate arbiter of a party litigant's interest in land, or more properly immovables, within its jurisdiction. *See* RUSSELL J. WEINTRAUB, COMMENTARY ON THE CONFLICT OF LAWS ch. 8 (1971); ROBERT A. LEFLAR, THE LAW OF CONFLICT OF LAWS § 22 (1959); Herbert F. Goodrich, *Two States and Real Estate*, 89 U. PA. L. REV. 417 (1941).

Based on these ancient principles, a court of one state has no jurisdiction over the real estate in a second state. *Brown v. Brown*, 46 Wn.2d 370, 372, 281 P.2d 850 (1955). It is a fundamental maxim of international jurisprudence that every state or nation possesses an exclusive sovereignty and jurisdiction within its own territory. *Brown*, 46 Wn.2d at 372. The rule is well established that the courts of one state cannot directly affect the legal title to land situated in another state. *Brown*, 46 Wn.2d at 372.

Legions of cases, olden and modern, hold that a court of one state cannot administer or affect title to real property sited in another state. Therefore, the home state of the property need not enforce decrees entered by a foreign state concerning the home

20

state's real estate. Decrees of one state affecting interests in land of another state are not accorded full faith and credit under the United States Constitution. *Fall v. Eastin*, 215 U.S. 1, 30 S. Ct. 3, 54 L. Ed. 65 (1909).

The United States Supreme Court even issued an opinion on this subject. In *Fall*, the court affirmed the Supreme Court of the State of Nebraska, which held that a deed to land situated in Nebraska, made by a commissioner under the decree of a court of the State of Washington in an action for divorce, was not effective in Nebraska because the Washington court lacked in rem jurisdiction. The divorcing wife argued that the Nebraska court must give full faith and credit to the Washington court's order authorizing the commissioner to transfer the husband's land in Nebraska to the wife. The high Court disagreed. The Court wrote:

> This doctrine is entirely consistent with the provision of the Constitution of the United States, which requires a judgment in any state to be given full faith and credit in the courts of every other state. This provision does not extend the jurisdiction of the courts of one state to property situated in another, but only makes the judgment rendered conclusive on the merits of the claim or subject-matter of the suit. "It does not carry with it into another state the efficacy of a judgment upon property or persons, to be enforced by execution. To give it the force of a judgment in another state, it must be made a judgment there; and can only be executed in the latter as its laws may permit."

*Fall*, 215 U.S. at 12 (quoting *McElmoyle v. Cohen*, 38 U.S. (13 Pet.) 312, 324, 10 L. Ed. 177 (1839)).

In *Green v. Wilson*, 163 N.C. App. 186, 592 S.E.2d 579 (2004), Wadell H. Pate

deeded real property in North Carolina to his wife, Mildred Green Pate, and stepson, Aaron L. Green (the Greens). The administratrix of Mildred Pate's estate, Polly Pate Wilson, asserted that the deeds were conveyed by undue influence and sought to have the deeds reformed. The Greens sued in North Carolina to quiet the title. Thereafter, the administratrix filed suit in Georgia, where the Greens resided, seeking to set aside the deeds. The North Carolina trial court granted Wilson's motion to stay the proceedings to allow the Georgia suit to proceed. The trial court granted the motion on the ground that the Georgia forum was the more convenient forum for the parties. The North Carolina Court of Appeals reversed. The court held that North Carolina has exclusive in rem jurisdiction to address the validity of a deed executed to convey property located entirely within North Carolina. The convenience of the parties was irrelevant. "In rem" proceedings encompass any action brought against a person in which the essential purpose of suit is to determine title to or affect interests in specific property located within territory over which court has jurisdiction. A court in a jurisdiction foreign to the subject property could not determine title to the property. Going further the courts of the situs of lands cannot be compelled to enforce the decrees affecting the lands and issued by the courts of another state.

Washington follows the rule that only courts within the Evergreen State hold jurisdiction to impact title or transfers of Washington land. *Werner v. Werner*, 84 Wn.2d 360, 367, 526 P.2d 370 (1974). In *State ex rel. Mann v. Superior Court, Thurston*

22

*County*, 52 Wash. 149, 100 P. 198 (1909), Edward Harkness died testate at his home in Los Angeles, California. He left an estate in California and real property in Thurston County, Washington. The California estate was in process of administration in California, when the will and California probate papers were filed with the Thurston County Superior Court. Devisees named in the will moved the superior court to dismiss the probate proceedings instituted in this state on the ground that there was no necessity for administration here. The trial court denied the petition and the Supreme Court affirmed. The court ruled there was a necessity for administration in this state, since the California court had no jurisdiction over the real property of the decedent having its situs in this state.

More on point is *Smith v. McKelvey*, 28 Ohio App. 361, 162 N.E. 722 (1928), because the issue was whether one state may authorize a guardian to dispose of property rights of the ward in an adjoining state and the transfer was not of fee simple. A party objected to a warranty deed executed and delivered in Indiana, by Solon Arms, guardian of Gertrude Arms Whicker, a person of unsound mind. The Franklin County, Indiana, court authorized the guardian to sign the deed, which conveyed the undivided inchoate interest and right of dower in Ohio property of Gertrude Arms Whicker. The Ohio court held that the courts of the state of Indiana had no authority to authorize and empower a guardian to convey real estate, or, more particularly, an inchoate right of dower in land situated in Ohio. The rule that one state will not take jurisdiction of an action concerning

23

real estate situated in another state is the necessary result of the independence of distinct sovereignties. The action for authorization should have been brought in the courts of the state of Ohio.

In *Richardson v. Allen*, 185 S.W. 252 (Mo. Ct. App. 1916), the Missouri court appointed L. L. Allen as guardian of Banks M. Burrow, an incompetent person. Banks owned real estate in Texas and Allen sought to sell the land. Allen did the right thing. He got approval from the Missouri court to sell the land, but then petitioned a Texas court for an ancillary guardianship and authorization to sell the land. The Texas court appointed a guardian in Texas to sell the land. The Texas guardian delayed forwarding the sale proceeds, and Caleb Richardson, the predecessor guardian in Missouri, argued that Allen should pay interest on the proceeds during the delay and even as far back as the date that the Missouri court authorized the sale. In ruling to the contrary, the Missouri court noted that its probate courts have no extraterritorial jurisdiction, and any Missouri order to sell lands in Texas was void. The court noted that courts repeatedly hold that any attempted sale of lands in another state by an administrator, executor, or guardian made by virtue of his appointment in Missouri and authority derived from our courts is so utterly void that such administrator, executor, or guardian cannot be charged with and compelled to account for the proceeds of such land, much less for interest thereon. *Richardson*, 185 S.W. at 253.

24

*In re Bruhns' Estate*, 58 Mont. 526, 193 P. 1115 (1920), a California resident, who owned land in Montana died intestate. Heirs of the decedent argued that the Montana court should apply California law, to the detriment of the widow, when distributing the Montana land. The court disagreed and wrote:

> We do not deem it necessary to cite authorities to the effect that jurisdiction of the courts in Montana in probate matters pertaining to real estate is confined solely to property situated in this state, and that any order or decree affecting realty in another state would be a nullity. Likewise the California probate courts may make no binding orders pertaining to real property in this state.

193 P. at 1116.

Finally, we return home to *Sparkman & McLean Income Fund v. Wald*, 10 Wn. App. 765, 772, 520 P.2d 173 (1974), which extends the prohibition of one state's authority to real property in another state to the handling of mortgages. The Walds successfully defended a suit for the collection of a debt by proving usury. Penalties accrued because of usury extinguished the debt. Both Washington and Oregon real property secured the debt, and the trial court ordered the lender to release the mortgages on the Washington and Oregon property. The *Wald* court affirmed all rulings, except the trial court order releasing the mortgage on the Oregon land. The court wrote:

> The trial court's attempt to directly affect the title to Oregon real property by extinguishing the Oregon mortgages was, however, of no force or effect. Courts of one state cannot directly affect the title to real property beyond that state's territorial limits.

25

10 Wn. App. at 772.

A grantor can convey no greater title or interest than the grantor has in the property at issue. *Firth v. Hefu Lu*, 146 Wn.2d 608, 615, 49 P.3d 117 (2002); *Sofie v. Kane*, 32 Wn. App. 889, 895, 650 P.2d 1124 (1982). Since Freedom Financial's mortgage on the South Pender Lane property was invalid, it could not assign an effective interest in the property to OneWest Bank.

OneWest Bank argues that Maureen Erickson had the opportunity to litigate before the Idaho court the question of whether the Idaho court could authorize an Idaho conservator to encumber the property. Alternatively, OneWest Bank argues that the Idaho court must have ruled that Bill McKee was a domiciliary of Idaho for the Idaho court to proceed as it did. OneWest Bank complains that Maureen Erickson's defense of this suit is a collateral attack on Shelley Bruna's authority.

We reject OneWest Bank's arguments for several reasons. The record before the trial court and this court does not show that the Idaho court rendered any ruling concerning the domiciliary of Bill McKee. Nor does the record show that the Idaho court specifically held that it had jurisdiction to encumber real property in Washington State. We also question whether Maureen Erickson was a party to the Idaho proceeding and would be bound by the Idaho court ruling.

Even if the Idaho District Court ruled it had jurisdiction to approve a mortgage on

Washington property, we would and could reject the ruling. Even if the Idaho District Court held Bill McKee to be an Idaho resident, we would and could reject authorization to encumber Washington property. Such a ruling is not entitled to full faith and credit. *Fall*, 215 U.S. 1.

The only fact relevant to the Idaho court's authority to authorize an encumbrance is the location of the mortgaged property being in Washington State. This fact cannot be disputed. When the facts are not in dispute, this court may grant summary judgment to the nonmoving party. *Leland v. Frogge*, 71 Wn.2d 197, 201, 427 P.2d 724 (1967); *Wash. Ass'n of Child Care Agencies v. Thompson*, 34 Wn. App. 225, 660 P.2d 1124 (1983); *Impecoven v. Dep't of Revenue*, 120 Wn.2d 357, 365, 841 P.2d 752 (1992). Maureen Erickson did not formally move for summary judgment on the issue of the validity of the Idaho order directing the conservator to enter the reverse mortgage, but she asked for such a ruling in response to OneWest Bank's summary judgment motion. She also requested this ruling on appeal. Therefore, we grant Erickson summary judgment on this issue. Upon reversal of summary judgment in favor of one party, a grant of summary judgment to the other party can be an appropriate remedy when the two motions take diametrically opposite positions on the dispositive legal issue and raise no issues of fact. *Weden v. San Juan County*, 135 Wn.2d 678, 710, 958 P.2d 273 (1998); *Ki Sin Kim v. Allstate Ins. Co.*, 153 Wn. App. 339, 353, 223 P.3d 1180 (2009).

In its complaint, OneWest Bank asks for a money judgment against "the defendants." CP at 201. Technically this request seeks a money judgment against Maureen Erickson, but the request appears to be an error, since elsewhere OneWest Bank waives any right to a deficiency judgment. In one paragraph of the claim for relief, OneWest Bank asks "that no deficiency judgment be taken against the defendants." CP at 202. OneWest Bank asserts no claim against Maureen Erickson other than a claim to have its interest in the property be declared first in priority over Erickson's interest in the property.

In its complaint, OneWest Bank asserts an interest in the South Pender Lane home only by reason of the reverse mortgage. We declare the reverse mortgage invalid. Because we rule against OneWest Bank on the only claim it asserts, we dismiss OneWest Bank's complaint.

CONCLUSION

We declare the October 22, 2007 Idaho court order ineffective to the extent it sought to approve conservator Shelley Bruna's encumbering the Pender Lane, Spokane residence. In turn, we declare the October 25, 2007 deed of trust, signed by Shelley Bruna and encumbering South Pender Lane, invalid. We reverse the trial court's grant of summary judgment in favor of OneWest Bank and instead grant Maureen Erickson

No. 31944-0-III
*OneWest Bank v. Erickson*

summary judgment dismissing OneWest Bank's complaint with prejudice.

_____
Fearing, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Lawrence-Berrey, J.

29