

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE FEB 04 2016

CHIEF JUSTICE



This opinion was filed for record
at 8:00 AM on Feb. 4, 2016

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ONEWEST BANK, FSB, its successor in interest and/or assigns, | ) ) ) | |
| Petitioner, | ) ) | No. 91283-1 |
| v. | ) ) | EN BANC |
| MAUREEN M. ERICKSON, | ) ) | |
| Respondent, | ) ) | Filed     FEB 0 4 2016 |
| PALISADES COLLECTION LLC, ASSIGNEE OF AT&T; GONZAGA PREPARATORY SCHOOL, INC.; SOCIETY OF JESUS OREGON PROVINCE; JOHN TRAYNOR AND JANE DOE TRAYNOR, individually and marital community if any; ALBERT FAULKNER AND JANE DOE FAULKNER, individually and marital community, if any; PHIL MCLEAN AND JANE DOE MCLEAN, husband and wife; LARRY SMITH AND JANE DOE SMITH, individually and marital community if any; KEVIN R. MALONE AND CHRISTINE MALONE, individually and marital community if any; OCCUPANTS OF THE PREMISES; QUALCHAN HILLS HOMEOWNERS' ASSOCIATION; and any persons or | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

parties claiming to have any right,     )
title, estate, lien or interest in the real  )
property described in the complaint,  )
                                        )
               Defendants.              )
_____  )

FAIRHURST, J.—At its core, this case concerns the authority of an Idaho court to impact property in Washington and whether we must respect that court's orders. This case arose through OneWest Bank FSB's attempted foreclosure of Washington property based on a reverse mortgage that an Idaho court ordered through Bill McKee's conservatorship proceedings. McKee's daughter, Maureen M. Erickson, challenges the foreclosure, claiming the reverse mortgage is void because she was the actual owner of the property and the Idaho court had no jurisdiction to affect Washington property, among other claims. The trial court granted summary judgment for OneWest, allowing it to proceed with foreclosure, but the Court of Appeals, Division Three, reversed and granted summary judgment for Erickson. We must primarily decide whether the courts below were required to give full faith and credit to the Idaho court orders. We hold that full faith and credit is due and OneWest is entitled to foreclose its reverse mortgage on the Spokane property. We reverse the Court of Appeals.

## I. FACTUAL AND PROCEDURAL HISTORY

### A.    Background

This case arose as a foreclosure action but is set against the backdrop of a series of family disputes and litigation involving McKee, his property assets, and his conservatorship.

McKee purchased the property at issue, a home in Spokane, in 2001. Erickson and her sons moved into the house, while McKee spent part of his time in the Spokane home and part in Idaho throughout the next few years. McKee began living on the property with Erickson's family around 2007.

Erickson filed suit against McKee in Spokane for concealing her mother's will and failing to transfer her assets due under the will. As a result of the litigation, McKee transferred property to Erickson, including a quitclaim deed to the Spokane property that was executed on June 28, 2007. Erickson did not record the deed for over four years. On August 22, 2007, the Spokane County Superior Court signed an order dismissing Erickson's action against McKee but did not enter formal judgment until early 2008. The court acknowledged that its August 22, 2007 order "was signed without formal judgment entered beforehand" and issued a judgment nunc pro tunc. Clerk's Papers (CP) at 19. The judgment declared that Erickson held all rights to the Spokane property.

Meanwhile, McKee's son initiated conservatorship proceedings for McKee in district court in Idaho in early 2007. The Idaho court appointed Shelley Bruna as McKee's conservator.[1]

When McKee was faced with financial difficulties, the Idaho court issued an order on October 22, 2007 directing McKee's conservator to "facilitate a reverse mortgage" on the Spokane property. CP at 108-12 (capitalization omitted). The order appears to bear Erickson's signature, indicating that she "read and approved" the order directing the reverse mortgage. CP at 111 (capitalization omitted). Bruna entered into the reverse mortgage on October 25, 2007. The mortgage passed through a series of assignments to OneWest. In 2008, McKee's Idaho conservatorship was terminated and guardianship proceedings continued in the Washington courts.

McKee passed away on March 12, 2011. Pursuant to the terms of the reverse mortgage, the balance was accelerated and declared due in full upon McKee's death. Erickson requested and received an extension on the time to repay the loan until December 12, 2011. On December 8, 2011, she recorded the quitclaim deed that her father had signed in 2007 transferring the Spokane property to her. Erickson

---

[1] The Idaho court signed letters of conservatorship appointing Bruna as McKee's conservator on August 27, 2007. The letters were recorded on September 8, 2007, and a formal order appointing Bruna was issued on September 24, 2007. The record does not indicate why the Idaho court issued the formal order weeks after signing and recording the letters of conservatorship.

requested another payment extension on December 9, 2011, but it was not granted. As a result of the failed payments, OneWest initiated foreclosure proceedings. Erickson's defense to the attempted foreclosure forms the basis for our review.

B.     Procedural history

1.     *Trial court*

OneWest filed this foreclosure action in 2012 against multiple parties, including Erickson, claiming an interest in the Spokane property. OneWest moved for summary judgment, asserting that Erickson took title to the Spokane property subject to the recorded reverse mortgage that OneWest now possessed. OneWest claimed that it was a bona fide mortgagee protected by Washington's recording act, chapter 65.08 RCW, because neither OneWest nor its predecessor had notice of Erickson's interest in the property when the deed of trust was recorded on October 30, 2007.

In response, Erickson disputed OneWest's bona fide mortgagee status, claiming OneWest's predecessor should have had inquiry notice that Erickson claimed ownership to the Spokane property because she lived there and possessed a quitclaim deed at the time Bruna executed the deed of trust. Erickson also challenged the conservator's authority, claiming an Idaho court could not direct a conservator to affect Washington property when McKee was not an Idaho resident. Finally, she

asserted that OneWest did not hold the promissory note and claimed the deed of trust was not properly acknowledged. Erickson requested summary judgment in her favor.

In its reply, OneWest disputed the claim of inquiry notice, asserting there was no reason to inquire about Erickson's potential property interests when all records showed McKee as the property owner and current resident of the Spokane property at the time his conservator entered into the deed of trust on his behalf. OneWest also responded to Erickson's argument that an Idaho conservator lacks authority over nonresidents' out-of-state property, citing provisions of Idaho's Uniform Probate Code to argue that conservators have broad statutory authority to manage property in all states. Finally, OneWest claimed that it legally possessed the promissory note and that the deed of trust was sufficiently acknowledged.

OneWest then filed a surreply, which included a copy of the Idaho court order directing Bruna to enter into a reverse mortgage on McKee's Washington property. OneWest was initially unable to produce the official order because it was sealed. The order includes Erickson's signature stating that she "read and approved" the order directing the reverse mortgage. CP at 111 (capitalization omitted).

The trial court granted partial summary judgment in favor of OneWest, finding that OneWest was the holder of the promissory note and that the acknowledgment on OneWest's deed of trust was sufficient. The court requested additional briefing from the parties to resolve the remaining issues.

Erickson's supplemental brief reasserted her argument that OneWest was not a bona fide mortgagee; claimed that Erickson asserted title to the property before the mortgage and shared that information with the courts, the conservator, and the lender; and responded to allegations that she may have perpetrated fraud on the initial lender. Erickson attached a declaration providing "background" in order to "understand the events that have led to the current situation affecting [her] property." CP at 124. She explained that she obtained title to the property because she had helped her father with the initial down payment, she remained his primary caregiver for years, and he ultimately transferred title to her when she discovered he had concealed her mother's will from her. She attached letters from her father to the Idaho court, expressing his displeasure with the conservatorship proceedings and claiming he was a Washington resident. Erickson also claimed she "[does] not recall seeing or signing any court order" from the conservatorship proceedings, including the order directing the mortgage that purportedly bore her signature. CP at 131.

OneWest responded with an affidavit including faxes from Erickson stating her intention to pay off the reverse mortgage and requesting extensions of time to pay. OneWest also reasserted that it was a bona fide mortgagee because it had no reason to know of or inquire about the unrecorded quitclaim deed, especially when Erickson appeared to have signed the order directing the reverse mortgage and allegedly provided funds to facilitate the closing of the reverse mortgage. In response

to Erickson's challenge to the court order, OneWest reemphasized the conservator's statutory authority to enter the reverse mortgage without a court order,[2] but also pointed to the order as additional support. Finally, OneWest claimed that Erickson could not collaterally attack the Idaho court's conservatorship proceedings because "[a]ll such claims were already adjudicated by the Idaho Court in front of the proper parties to the matter." CP at 175.

The parties also raised multiple evidentiary challenges to declarations and documents submitted in the summary judgment proceedings.

The trial court granted summary judgment in favor of OneWest and rejected all evidentiary challenges. First, it found the Idaho court order directing Bruna to enter into the reverse mortgage was admissible as a business record but stated that even if it were not, the "Order is not critical to this Court's determination of this matter, and this Court would have reached the same conclusion without consideration of the Idaho Order." CP at 188-89. Second, the trial court accepted OneWest's exhibits relating to the closing and repayment of the loan, but again noted that the trial court would have reached the same conclusion even if these exhibits were inadmissible. Finally, the trial court recognized that Erickson's supplemental

---

[2]OneWest asserted, "Under Idaho probate law, Shelley Bruna had broad power over all property of Bill McKee as his conservator, including property in Washington State, and could encumber the subject property without authorization from the Court." CP at 174 (citing portions of the Idaho Uniform Probate Code).

declaration was "predominately unsupported hearsay," but the court decided not to strike the exhibit because it was helpful to understanding Erickson's "'side of the story,'" although the court "assign[ed] it little weight." CP at 189. The trial court held that OneWest was a bona fide purchaser for value and that Erickson took the Spokane property subject to OneWest's deed of trust.

### 2. *Court of Appeals*

On appeal, Erickson claimed a number of errors, which the Court of Appeals summarized as follows:

> (1) [T]he trial court relied on inadmissible evidence, (2) Financial Freedom's deed of trust was not properly notarized and thus failed to attach to the property, (3) OneWest failed to prove it holds the note and cannot foreclose on the deed of trust alone, and (4) Shelley Bruna lacked the authority to encumber property that Bill McKee no longer owned because (a) Idaho law does not authorize a conservator for a nonresident to encumber real property outside of the state of Idaho, (b) Financial Freedom had actual or constructive knowledge that Maureen Erickson owned the property, and (c) OneWest's interest in the property is not superior to Financial Freedom's since OneWest was not a bona fide purchaser.

*OneWest Bank, FSB v. Erickson*, 184 Wn. App. 462, 476-77, 337 P.3d 1101 (2014), *review granted*, 183 Wn.2d 1001, 349 P.3d 857 (2015).

The Court of Appeals concluded one issue was dispositive—that "the Idaho court lacked authority to authorize a conservator to encumber the Spokane residence"—and reversed on that ground without addressing the remaining issues. *Id.* at 477. To reach this decision, the court analyzed Idaho law and concluded that

conservators in that state have no statutory authority to encumber a nonresident's property outside of Idaho and noted that the "undisputed facts" show that McKee was a Washington resident throughout the conservatorship proceedings. *Id.*

The Court of Appeals went on to address the issue of full faith and credit, stating, "Even if Idaho law authorized the Idaho courts to approve a mortgage on property in Washington State, we would rule to the contrary because we are not bound by a foreign state's order concerning property here." *Id.* at 479. For support, the court relied on "ancient principles" and cases suggesting that "the courts of one state cannot directly affect the legal title to land situated in another state." *Id.* at 479-80. The court gave three reasons for rejecting OneWest's claim that Erickson could not collaterally attack the conservator's authority. First, the record did not demonstrate that the Idaho court ruled on McKee's domicile or its jurisdiction to encumber Washington property. Second, the court questioned whether Erickson was a party to the Idaho proceeding (and therefore whether the Idaho court could bind her). Finally, the court recognized that even if the first two claims were true, it would still reject the Idaho court's ruling on full faith and credit grounds because the Idaho court did not have jurisdiction to encumber Washington property. *Id.* at 484-85.

Finding no disputed issues of material fact, the Court of Appeals reversed the trial court's summary judgment order for OneWest and instead granted summary judgment in favor of Erickson.

OneWest filed a motion for reconsideration raising three issues. First, OneWest asserted that the parties did not have the opportunity to fully brief the full faith and credit issue and claimed this court's decision in *In re Marriage of Kowalewski*, 163 Wn.2d 542, 182 P.3d 959 (2008) should control. Second, OneWest disputed the court's reading of Idaho law and claimed that the conservator had statutory authority to encumber the property at issue. Third, OneWest requested an alternative remedy of remand so OneWest could further pursue equitable arguments.

After the Court of Appeals summarily denied OneWest's motion for reconsideration, OneWest petitioned this court for review, raising multiple issues but mainly focusing on whether a Washington court must give full faith and credit to an Idaho court order encumbering Washington property. We granted review. *OneWest Bank*, 183 Wn.2d 1001.

## II. ISSUES

A.    Is an Idaho court order authorizing a conservator to encumber Washington property with a reverse mortgage entitled to full faith and credit?

B.    Does OneWest prevail as a bona fide mortgagee?

C.    Is OneWest otherwise entitled to foreclose on the Spokane property?

## III. ANALYSIS

A.   The Idaho court orders are entitled to full faith and credit

OneWest seeks to foreclose a reverse mortgage on the Spokane property that arose as a result of two Idaho court orders—one appointing Bruna as McKee's conservator and one directing her to enter into the reverse mortgage on McKee's property. We hold that Washington courts are required to give full faith and credit to the Idaho proceedings. Erickson cannot now attack that court's decisions here.

1.   *Full faith and credit turns on jurisdiction*

The full faith and credit clause of the United States Constitution states, "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." U.S. CONST. art. IV, § 1.

Under full faith and credit principles, states are obligated to recognize judgments of sister states and parties can collaterally attack a foreign order "only if the court lacked jurisdiction or constitutional violations were involved." *State v. Berry*, 141 Wn.2d 121, 128, 5 P.3d 658 (2000). Otherwise, a Washington court "'must give full faith and credit to the foreign judgment and regard the issues thereby adjudged to be precluded in a Washington proceeding.'" *Id.* (internal quotation marks omitted) (quoting *In re Estate of Tolson*, 89 Wn. App. 21, 30, 947 P.2d 1242 (1997)). The party disputing a foreign order has the burden of establishing lack of jurisdiction. *In re Parentage of Infant Child F.*, 178 Wn. App. 1, 8, 313 P.3d 451

(2013) (citing *Williams v. S.S. Mut. Underwriting Ass'n*, 45 Wn.2d 209, 213, 273 P.2d 803 (1954)). The standard of review is de novo in determining whether a court's refusal to accord full faith and credit to a foreign judgment was improper. *Id.* at 7.

As a threshold matter to the full faith and credit issue, we must determine whether the Idaho court had personal and subject matter jurisdiction to direct a conservator to enter into a reverse mortgage on McKee's Spokane property.

2.      *Personal jurisdiction*

In determining whether an Idaho court has jurisdiction over the parties to a conservatorship proceeding, we should apply the law of Idaho. *See Brown v. Garrett*, 175 Wn. App. 357, 367, 306 P.3d 1014 (2013) (applying the law of Texas to determine if Texas had jurisdiction over the action the parties sought to enforce in Washington); *Indus. Fin. Co. v. Lovell*, 9 Wn. App. 829, 831, 515 P.2d 1304 (1973) (applying the law of South Dakota to determine if the South Dakota court properly obtained personal jurisdiction through service).

Idaho courts have personal jurisdiction over their residents. *See Jonasson v. Gibson*, 108 Idaho 459, 462, 700 P.2d 81 (Ct. App. 1985) ("Although the theory of jurisdiction has changed somewhat since *Pennoyer* [*v. Neff*, 95 U.S. (5 Otto) 714, 24 L. Ed. 565 (1877)], residence is still an adequate basis."). The Idaho long-arm statute

13

also extends personal jurisdiction to the limits of the due process clause to include jurisdiction over certain out-of-state residents.[3]

The Idaho court's general jurisdiction depends on where McKee was domiciled when the conservatorship proceedings began in February 2007. There is some dispute as to McKee's domicile at the time of the conservatorship proceedings. Erickson contends, and the Court of Appeals agreed, that McKee was a Washington resident during the relevant time period. Erickson supports this claim with her own declaration and handwritten letters purportedly from her father to the Idaho court asserting that he was a Washington resident. OneWest points out that the Idaho court had already considered and rejected a challenge to McKee's domicile in the conservatorship proceedings and urges this court to accept that determination.

We agree that we cannot question McKee's domicile because the personal jurisdiction issue was already litigated and decided in the Idaho conservatorship proceedings. Generally, once a court determines it has personal jurisdiction, that decision is entitled to res judicata. *See Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982) ("By submitting to the jurisdiction of the court for the limited purpose of challenging

---

[3]That statute grants personal jurisdiction over causes of action arising from conducting business within Idaho, committing a tort within Idaho, owning or using property within Idaho, contracts involving the State, and other unrelated acts. IDAHO CODE § 5-514. Specific personal jurisdiction applies only if the lawsuit "arise[s] out of or relate[s] to" the party's contact with the state. *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 75, 803 P.2d 978 (1990).

jurisdiction, the defendant agrees to abide by that court's determination on the issue of jurisdiction: That decision will be res judicata on that issue in any further proceedings."); *Perry v. Perry*, 51 Wn.2d 358, 369-70, 318 P.2d 968 (1957); RESTATEMENT (SECOND) OF JUDGMENTS § 10 (AM. LAW INST. 1982).

According to the docket from the Idaho conservatorship proceedings,[4] it appears that McKee objected to personal jurisdiction in the Idaho court, but the court denied his objection and exercised jurisdiction over him. The docket states that a "Motion To Dismiss For Lack of Jurisdiction," along with an "Affidavit of Bill E. McKee Re: Domicile and Residence," were filed on June 6, 2007. CP at 97-98. McKee submitted another affidavit regarding his domicile and residence on June 21, 2007. *Id.* at 98. On June 26, 2007, the docket indicates that the court issued an "Order Denying Motion To Dismiss For Lack of Jurisdiction." *Id.*

Although we do not have the particular Idaho court order at issue, we have sufficient evidence that the Idaho court considered challenges to McKee's domicile and ruled that it had jurisdiction to appoint a conservator over him. We accept the Idaho court's determination that it had jurisdiction based on res judicata principles. In addition, Erickson's bare assertions in a declaration in opposition to OneWest's summary judgment motion that her father moved in with her in early 2007 are not sufficient to overcome the evidence that the Idaho court properly exercised

---

[4]OneWest did not submit copies of these documents because the case was sealed.

jurisdiction. McKee was an Idaho resident for 40 years. At the time of the conservatorship proceedings, he owned property in multiple states, including Idaho. Even an assertion that he began staying with Erickson at the Spokane property in 2007 is not sufficient to prove he affirmatively changed his domicile and intended to remain only a Washington resident at that time. There was enough evidence for the Idaho court to conclude it had sufficient contacts to exercise jurisdiction over McKee. If Erickson wanted to challenge this determination, the Idaho court was the proper forum for doing so.[5] She cannot collaterally attack that determination here.

3.    *Subject matter jurisdiction and power over out-of-state property*

In addition to personal jurisdiction, we must decide whether the Idaho court had subject matter jurisdiction and the power to enter orders affecting Washington property. So long as a court in another state has jurisdiction, "the full faith and credit clause of the Constitution precludes any inquiry into the merits of the cause of action,

---

[5]Erickson had multiple opportunities for relief besides coming to Washington courts to challenge the Idaho orders. As McKee was the protected party in the conservatorship proceedings, he could have appealed the Idaho court orders with which he disagreed. Erickson could have attempted to intervene in those proceedings to challenge the court's determinations. The docket from the Idaho proceedings indicates Erickson was both aware of and participated in the conservatorship by filing affidavits. That court was the proper forum for Erickson to challenge the Idaho court's decisions. Not only did Erickson not challenge the conservatorship, but later it appears that she signed the order stating she "read and approved" of the reverse mortgage. CP at 111 (capitalization omitted).

Erickson also failed to avail herself of another significant protection. Had she simply recorded her deed, her interest in the property would have been secured and she could have challenged the Idaho court's authority over her property. But absent any recording or notice that Erickson owned the property, the Idaho court properly adjudicated McKee's interests in the property because he held record title.

the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based." *Milliken v. Meyer*, 311 U.S. 457, 462, 61 S. Ct. 339, 85 L. Ed. 278 (1940).

Erickson does not dispute that the Idaho District Court is a court of general subject matter jurisdiction. *See* IDAHO CODE § 1-701. Rather, the jurisdictional issue turns on whether the Idaho court had the power to affect property in another state.

a)    *Courts have jurisdiction to indirectly affect interests in, but not directly transfer title to, out-of-state property*

Erickson agrees with the Court of Appeals that the Idaho court's orders appointing and directing the conservator to enter into the reverse mortgage on McKee's Spokane property are not entitled to full faith and credit because an out-of-state court has no jurisdiction to enter orders affecting property in Washington. She asserts that only Washington courts have power over property in this state.

OneWest contends that the jurisdictional rules regarding a foreign court's adjudication of Washington property are more nuanced. More specifically, OneWest asserts that actions involving personal interests in property, as opposed to actions adjudicating legal title to real property, need not be adjudicated in the state where the real property is located. For support, OneWest relies primarily on *Kowalewski*, 163 Wn.2d 542. We agree with OneWest.

This court most recently addressed the issue of a state's power to adjudicate out-of-state property interests in *Kowalewski*. This case involved a marriage

17

dissolution action and the Pierce County Superior Court's attempt to divide property, including certain real property in Poland. Mr. Kowalewski claimed the Washington court lacked jurisdiction to affect title to property outside of the state.

We rejected Mr. Kowalewski's claim and held that a court with proper personal and subject matter jurisdiction "has power to divide the parties' personal interests in all property brought to its attention, wherever situated." *Id.* at 544. We agreed with Mr. Kowalewski that an out-of-state court cannot "directly . . . affect title to real property located outside the state," *id.* at 548, but went on to distinguish between "jurisdiction to adjudicate personal interests in real property, which is a transitory action, and jurisdiction to adjudicate legal title to real property, which is a local action that must be brought in the situs state," *id.* at 547.

Applying this distinction, we stated that the marital dissolution proceeding was not an in rem action over title to the Polish property, but rather "an in personam action in which a Washington court has jurisdiction to determine the parties' relative interests in all property brought to the court's attention." *Id.* at 549-50.

*Kowalewski* rests on a foundation of "nearly 200 years" of cases upholding the power of courts to determine personal interests in out-of-state property. *Id.* at 548 (citing *Massie v. Watts*, 10 U.S. (6 Cranch) 148, 3 L. Ed. 181 (1810)). Indeed, many of the cases on which Erickson and the Court of Appeals rely to claim lack of

jurisdiction recognize this distinction between an out-of-state court's powers over title to property versus personal interests in property.

For instance, in *Fall v. Eastin*, 215 U.S. 1, 30 S. Ct. 3, 54 L. Ed. 65 (1909), the United States Supreme Court addressed the authority of a Washington court to enter a divorce decree affecting title to land in Nebraska. The Court held that Nebraska courts need not give full faith and credit to a Washington court's order attempting to transfer land in Nebraska because the transfer of title to real property can be ordered only by the jurisdiction where the land is located. However, *Fall* goes on to point out an exception to this rule for courts sitting in equity, stating that a court has the power to "indirectly act upon real estate in another State" through its in personam jurisdiction over the party. *Id.* at 8. "Whatever [the court] may do through the party it may do to give effect to its decree respecting property, whether it goes to the entire disposition of it or only to affect it with liens or burdens." *Id.*

Erickson also relies on *Brown v. Brown*, 46 Wn.2d 370, 281 P.2d 850 (1955) to claim that the Idaho court lacked jurisdiction to encumber Washington property. In *Brown*, a California court entered a default divorce decree and purported to award the husband land in Washington. *Brown* upheld the wife's collateral attack on the California court order, holding the California court lacked jurisdiction because "the courts of one state can not directly affect the legal title to land situated in another state." *Id.* at 372. However, *Brown* also acknowledged that a court could have the

power to enforce its decree and indirectly affect the property through its power over the person. *Id.* According to *Kowalewski*'s discussion of *Brown*, the California court may have lacked jurisdiction to directly transfer title to Washington property but it could still have "exercise[d] its coercive powers to accomplish indirectly what it could not do directly." 163 Wn.2d at 547.

Other cases support the proposition that a court has authority to determine parties' personal interests in out-of-state property, even when that court may lack jurisdiction to directly transfer title to the property. *Id.* at 549 (collecting cases); *Silver Surprize, Inc. v. Sunshine Mining Co.*, 74 Wn.2d 519, 526, 445 P.2d 334 (1968) ("[A]n action brought to try the naked question of title to land must be brought in the state where the land is situate," but where "the action is transitory and one over which the court has jurisdiction, the court may hear and determine the action even though a question of title to foreign land may be involved, and even though the question of title may constitute the essential point on which the case depends.").

Both Erickson and the Court of Appeals fail to recognize the important distinction between a court's power to indirectly affect interests in out-of-state property compared to a court's lack of jurisdiction to directly transfer title to such

property.[6] If the Idaho court orders merely determined personal interests in the Washington property and did not directly transfer legal title, then they are entitled to full faith and credit.

b)      *The Idaho court had jurisdiction to order a reverse mortgage as an interest in, rather than transfer of title to, out-of-state property*

The Idaho court orders at issue fall within the court's in personam jurisdiction to adjudicate personal interests in out-of-state property. The first order, which appoints Bruna as McKee's conservator, did not adjudicate any interests in real property. The second order, which directs Bruna to enter into a reverse mortgage, did not rise to the level of directly transferring legal title to property. The court merely used its jurisdiction over the person, not the property, to direct the mortgage.

Moreover, the resulting mortgage itself did not directly transfer title. Although some states hold that a mortgage conveys legal title to real property, Washington follows the lien theory. *See John Davis & Co. v. Cedar Glen # Four, Inc.*, 75 Wn.2d 214, 221-22, 450 P.2d 166 (1969) ("A mortgage does not vest legal title in a mortgagee. It only creates a lien upon the land in favor of the mortgagee as against the interest of the mortgagor."); *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 92-

---

[6]At oral argument, Erickson's attorney asserted a new theory—that the Idaho court must have directly transferred title from Erickson to McKee and awarded him the Spokane property. Wash. Supreme Court oral argument, *OneWest Bank, FSB v. Erickson*, No. 91283-1 (Oct. 22, 2015), at 21 min., 32 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. We find no support in the record for this proposition and will not consider this theory based on speculation alone.

93, 285 P.3d 34 (2012) (deed of trust securing a mortgage does not convey title); 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 18.2, at 305 (2d ed. 2004) ("Washington is a 'lien-theory' state. Since territorial days, decisions of the state supreme court have held that a mortgage does not convey title as in the old English mortgage and as in a number of American states, but gives the mortgagee only a lien on the mortgaged land."); RCW 7.28.230(1) ("A mortgage of any interest in real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property, without foreclosure and sale according to law."). Like other mortgages, borrowers in Washington retain legal title to their property in their name when they enter into a reverse mortgage. RCW 31.04.505(2). Since the Idaho court orders did not directly transfer title to out-of-state property, Erickson's jurisdictional argument fails.

Erickson attempts to distinguish *Kowalewski*. She points out that *Kowalewski* involved a Washington court determining property interests in real property located in another country, and that the full faith and credit clause applies only to orders issued in the United States. Indeed, *Kowalewski* recognizes that the full faith and credit clause does not apply to foreign countries and states, "It remains for the Polish courts to decide what effect, if any, the Washington decree has on the legal ownership of real property in Poland." 163 Wn.2d at 552. Erickson seems to argue

that Washington courts have similar authority to determine the validity of the Idaho court orders at issue. However, we explicitly noted in a footnote in *Kowalewski* that the full faith and credit clause requires *states* to recognize the judgments of other states. *Id.* at 552 n.1. This case falls squarely within the full faith and credit clause because it involves a Washington court's enforcement of Idaho court orders.

We hold that the Idaho court orders are entitled to full faith and credit in Washington courts. Under the full faith and credit clause, a state is required to enforce the judgment of sister states unless there is a jurisdictional or constitutional defect. A Washington court can therefore examine whether the Idaho courts had jurisdiction; but once it recognizes Idaho's jurisdiction, it cannot question the validity of those court orders or the conservator's statutory authority. Full faith and credit requires us to accept those determinations by the Idaho court because it had personal jurisdiction over McKee's conservatorship proceedings and jurisdiction to enter the reverse mortgage order as a judgment affecting personal interests in out-of-state property.

B.    OneWest prevails as a bona fide mortgagee

Having decided the Idaho court orders are enforceable in Washington, this case comes down to a recording act issue—two parties claim interests in the same property, and their interests relative to one another depend on when each recorded

their deed and what notice they had. The trial court held that Erickson took title to the Spokane property subject to the reverse mortgage. We agree.

Washington is a "race-notice" jurisdiction. *See* RCW 65.08.070.[7] Our recording act modifies the common law rule of "first in time, first in right" to determine property interests and instead gives priority to bona fide purchasers. The term "purchaser" includes a mortgagee and subsequent assignees of a mortgage. RCW 65.08.060(2). In order to qualify as a bona fide purchaser or mortgagee under Washington law, a party must pay value for an interest in land, record its interest first, and act in good faith without notice of a prior party's unrecorded interest. *See Miebach v. Colasurdo*, 102 Wn.2d 170, 175, 685 P.2d 1074 (1984); RCW 65.08.070. "Notice" includes both actual notice and constructive notice. *See Miebach*, 102 Wn.2d at 176 ("'[K]nowledge of facts sufficient to excite inquiry is constructive notice of all that the inquiry would have disclosed.'" (quoting *Peterson v. Weist*, 48 Wash. 339, 341, 93 P. 519 (1908))).

---

[7]RCW 65.08.070 provides:
A conveyance of real property, when acknowledged by the person executing the same (the acknowledgment being certified as required by law), may be recorded in the office of the recording officer of the county where the property is situated. Every such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for valuable consideration from the same vendor, his or her heirs or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded. An instrument is deemed recorded the minute it is filed for record.

The trial court held that OneWest was a bona fide purchaser and that Erickson took her interest in the property subject to OneWest's mortgage. A review of the record indicates that Erickson did not record her deed to the Spokane property until years after OneWest's predecessor recorded the reverse mortgage, even though Erickson claims she obtained her interest first.[8] Erickson does not dispute that OneWest, through its predecessor, qualifies as a purchaser for value with a prior recorded interest. Rather, she claims OneWest is not a bona fide mortgagee because its predecessor had notice of Erickson's existing interest in the Spokane property when it obtained the reverse mortgage. Because Erickson's interest was not recorded at that time, record notice was not possible,[9] so Erickson must show OneWest's predecessor had actual or constructive notice. The party claiming a purchaser had notice of a prior party's interest has the burden to prove such notice. *Biles-Coleman Lumber Co. v. Lesamiz*, 49 Wn.2d 436, 439, 302 P.2d 198 (1956).

---

[8]Erickson claims McKee originally quitclaimed the Spokane property to her on June 28, 2007, but she did not record that deed for another four years. CP at 23. McKee's conservator entered into the reverse mortgage on October 25, 2007, and the deed of trust was recorded five days later. CP at 33, 36. Erickson recorded her deed on December 8, 2011. CP at 23.

[9]Erickson claims OneWest or its predecessor should be charged with constructive notice because the 2007 quitclaim deed and the 2008 court order conveying property to Erickson "were matters of public record before the Deed of trust was assigned to OneWest" because they were part of court proceedings and they predated OneWest's predecessor's October 2007 deed of trust. Br. of Appellant at 23. But matters of public record are distinguishable from the record chain of title for a particular parcel of real property recorded in the county where the property sits. The latter is sufficient to defeat bona fide purchaser status, but we do not necessarily expect subsequent purchasers to inquire into the former. Erickson could have recorded her quitclaim deed or a lis pendens noting the litigation in the county office if she wanted to provide notice of her interest in the property. *See* RCW 4.28.320 (filing a lis pendens imparts constructive notice to purchasers or encumbrancers).

Erickson fails to meet her burden of proving that OneWest's predecessor had actual or constructive knowledge of Erickson's interest in the property. She alleges that she and her father would have told anyone who asked them that she was the true owner of the Spokane property. But what she might have told people who never had reason to inquire of her potential ownership in the first place is irrelevant to determining actual or constructive knowledge. In order to satisfy inquiry knowledge, a party must at least have knowledge of facts to trigger the inquiry. *Miebach*, 102 Wn.2d at 175-76. Erickson claims that she told the Idaho court and individuals involved in the loan process that she owned the property. But this is not sufficient to put the mortgagee on notice in this context, for even if we accept Erickson's allegations as true, the Idaho court considered her claims that she owned the property and still ordered the conservator to enter the mortgage over what it deemed to be McKee's property. The mortgagee was entitled to rely on this order, especially considering that it bears Erickson's signature consenting to McKee's conservator entering into a reverse mortgage on his Spokane property.

Erickson also claims that OneWest's predecessor should have had notice of her ownership because she occupied the property when the predecessor entered into the reverse mortgage. For support, Erickson relies on cases that suggest a person's possession of property may be enough to put subsequent purchasers on inquiry notice that the person possessing the property may own an interest in the land. *See*

*Glaser v. Holdorf*, 56 Wn.2d 204, 210, 352 P.2d 212 (1960) ("[P]ossession of land may be notice to all persons dealing with it of whatever rights the one in possession claims."); *Chittick v. Boyle*, 3 Wn. App. 678, 683, 479 P.2d 142 (1970) (purchaser with notice that a renter possessed the property under a lease from the prior owner was under a "duty to conduct a reasonably prudent inquiry as to the contents of such lease"); *Nichols v. DeBritz*, 178 Wash. 375, 380, 35 P.2d 29 (1934) (a party's actual possession of property constitutes "'notice to [purchasers or mortgagees] of whatsoever rights a prudent and reasonable inquiry would have revealed'" (quoting *Field v. Copping, Agnew & Scales*, 65 Wash. 359, 362, 118 P. 329 (1911))).

Although purchasers or mortgagees may often be charged with notice of inspecting property and discovering that an unrecorded interest holder actually possesses the property, this principle does not necessarily extend to circumstances where the record title owner lives on the property. Here, the parties agree that McKee lived on the Spokane property when OneWest's predecessor entered into the reverse mortgage. McKee, not Erickson, was the record holder at that time. Erickson fails to show why a lender should be required to further assess whether others living on the property, such as McKee's daughter acting as his caretaker, might hold a secret unrecorded interest in the property.

Without further facts to support a claim of inquiry notice, Erickson fails to meet her burden of challenging OneWest's status as a bona fide mortgagee. We

uphold the trial court's determination that OneWest is a bona fide mortgagee and Erickson's later-recorded interest in the Spokane property is subject to the reverse mortgage.

C.     OneWest is otherwise entitled to foreclose on the Spokane property

Both parties reassert a number of other issues that the Court of Appeals did not address because it found one issue—the conservator's authority—dispositive. We find that the remaining issues are properly resolved in favor of OneWest.

1.     *Admissibility of the Idaho court order*

First, Erickson challenges the admissibility of the Idaho court order directing the conservator to enter into the reverse mortgage. OneWest's attorneys were initially unable to obtain this order because the Idaho proceedings were sealed, then they later provided a copy of the order that they obtained through their client. Erickson asserts that the document is inadmissible and improperly authenticated.[10]

We agree with the trial court's determination that "[t]here are justifiable reasons for not being able to authenticate the Order, as the Idaho court file is sealed. There are sufficient indicia of authenticity, and the Order is admissible as a business

---

[10]More specifically, Erickson asserts,
> There is no indication where this faxed document originated and no one purported to authenticate it. The purported document appears to have been assembled from multiple faxed transmissions, appears to have been signed by an Idaho judge on different pages, contains no signatures that have been authenticated, does not show that it was ever entered, and does not show that it was ever circulated by the court clerk to anyone.

Answer to OneWest Bank FSB's Pet. for Review at 14.

28

record. The records are capable of being authenticated." CP at 188. We also reject

Erickson's assertion that OneWest fails to prove that OneWest's predecessor relied

on this Idaho court order. As discussed above, the deed of trust and promissory note

were both signed by Bruna, explicitly noting her authority as McKee's conservator

and stating she was entering the transaction "pursuant to court order." CP at 35, 47.

This indicates OneWest's predecessor knew of the court order when entering into

the reverse mortgage with Bruna.

### 2. *Acknowledgment on the deed of trust*

Second, Erickson claims the acknowledgment on the original lender's deed of

trust is statutorily defective and therefore invalid. More specifically, Erickson asserts

that the notary was required to explicitly state that McKee's conservator (who signed

the original deed of trust) actually appeared before the notary public, but he failed

to do so. This claim raises two issues: first, whether a notary is required to

specifically assert that the signer appeared before him; and second, if so, what effect

that deficient acknowledgment has on the deed of trust.

RCW 64.04.010 requires that conveyances of an interest in property must be

by deed. Deeds must be in writing, signed, and properly acknowledged. RCW

64.04.020. A person certifying the acknowledgment of a document involving real

property must

> recit[e] in substance that the person . . . known to him or her as, or
> determined by satisfactory evidence to be, the person . . . whose name

. . . [is] signed to the instrument as executing the same, *acknowledged before him or her* on the date stated in the certificate that he, she, or they, executed the same freely and voluntarily.

RCW 64.08.050 (emphasis added). Erickson relies on the emphasized language to claim that a proper acknowledgment must confirm that the person actually signed the document in a notary's presence. Erickson also points to RCW 42.44.080(1), which provides the standards by which notaries public certify a document's acknowledgment: "In taking an acknowledgment, a notary public must determine and certify, either from personal knowledge or from satisfactory evidence, that the person appearing before the notary public and making the acknowledgment is the person whose true signature is on the document." That statute also includes an example of a statement that is "sufficient" for a notary to certify acknowledgment, which includes the phrase: "I certify that I know or have satisfactory evidence that (name of person) is the person who appeared before me." RCW 42.44.100.

If we accept Erickson's interpretation that notaries are required to explicitly state that the person signing a deed appeared before them, the notarization on the deed of trust at issue fails to meet that requirement. A Spokane notary public signed, dated, and sealed the deed of trust with the following statement: "I hereby certify that I know or have satisfactory evidence that BILL E. MCKEE by Shelley Bruna, as his Conservator signed this instrument and acknowledged it to be the free and voluntary act for the uses and purposes mentioned in the instrument." CP at 44

30

(boldface omitted). The notarization does not state that Bruna appeared before the notary when she signed the instrument; it merely states the notary had sufficient evidence to confirm she signed it. OneWest claims the notary could have had satisfactory evidence to identify Bruna as the party signing the document without explicitly stating that Bruna appeared before the notary, but OneWest does not provide any facts to explain what this evidence might entail.

But even if the notary were required to explicitly state that Bruna appeared before him, the deficient acknowledgment does not necessarily render the deed of trust invalid. OneWest cites to cases involving the long-standing Washington rule that a defectively acknowledged deed is still valid between the parties to that deed and their heirs. *See, e.g., Ockfen v. Ockfen*, 35 Wn.2d 439, 441, 213 P.3d 614 (1950) (unacknowledged deed is good between both grantor/grantee and "between the heirs of the grantor and the grantee"). Erickson counters that those cases are inapplicable because she was not an original party to the deed of trust and she did not obtain the property as McKee's heir.

Both parties likely state the rule too narrowly. True, many cases state simply that a defectively acknowledged deed is good between the parties to that deed. However, this principle is not necessarily limited *only* to parties to that deed; the rule is often stated in this manner because the case just involves the parties to the original deed. *See, e.g., Anderson v. Thursday, Inc.*, 76 Wn.2d 54, 58, 455 P.2d 932 (1969)

31

(the fact that a deed was not acknowledged would "be of no avail between the parties" even if that claim were properly raised); *Bremner v. Shafer*, 181 Wash. 376, 383-84, 43 P.2d 27 (1935) (mortgage of community property that husband but not wife acknowledged is valid "between the parties" where "the question presented rais[es] an issue only as between the original parties to the transaction").

The few cases addressing the validity of a defectively acknowledged deed as to parties who are not the original grantor or grantee find the deed is still valid against the grantor's successors and those with notice of the deed. *See In re Estate of Deaver*, 151 Wash. 454, 456, 276 P. 296 (1929) (deed lacking notary public's seal "was valid as between the parties, and valid as to all persons claiming under the grantor, except, perhaps, a purchaser of the property for a valuable consideration who took without actual notice of the outstanding deed"); *Edson v. Knox*, 8 Wash. 642, 646, 36 P. 698 (1894) (unacknowledged deed still conveyed equitable title to grantee; grantor "*and those holding under him*" were therefore "estopped from asserting his legal title" (emphasis added)); *Ockfen*, 35 Wn.2d at 441 (unacknowledged deed is good both between grantor/grantee and "where the controversy is between the heirs of the grantor and the grantee"); *Lynch v. Cade*, 41 Wash. 216, 219, 83 P. 118 (1905) ("Conceding that the [unacknowledged] mortgage would be void as to the purchasers *without notice* on creditors of the mortgagors, it was good as between the

parties." (emphasis added)). These cases are consistent with a nationwide trend that finds defectively acknowledged deeds still bind persons with notice of the deed.[11]

Here, Erickson had notice of the deed of trust encumbering the Spokane property. It appears that Erickson had actual notice because she signed the Idaho court order, indicating that she "read and approved" the order directing Bruna to enter into the reverse mortgage on McKee's property. CP at 111 (capitalization omitted). In addition, Erickson had record notice based on RCW 65.08.030, which states that an improperly acknowledged deed that is recorded[12] "shall impart the same notice to third persons" as if it were properly acknowledged. Because Erickson was clearly aware of and consented to the deed of trust encumbering the Spokane property when it was executed, she should not now be permitted to challenge a technical defect in the notary's certification of acknowledgment.[13]

### 3. *Holder of the promissory note*

Third, Erickson asserts that OneWest fails to prove that it is the holder of the promissory note for the reverse mortgage and therefore it has no rights to foreclose.

---

[11]"In practically all jurisdictions, statutes provide for the acknowledgment of deeds, usually only in order that the deed may be recorded under the recording laws, and when this is the case, an unacknowledged deed is binding between the parties thereto, their heirs and representatives, *and persons having actual notice of the instrument*, and will convey at least an equitable title." 23 AM. JUR. 2D *Deeds* § 88 (citations omitted) (emphasis added).

[12]A notation on the deed of trust indicates that it was properly recorded in Spokane County, the county in which the property is located. CP at 36.

[13]It is notable that Erickson does not allege any facts involving fraud in Bruna's execution of the deed of trust, nor does she claim that the deed was forged. She merely claims a technical error was made in the notarization process.

Erickson claims that OneWest does not have legal rights to enforce the reverse mortgage because it can prove only that it possesses the deed of trust but not the promissory note.[14]

OneWest provides evidence of successive assignments: Financial Freedom (the original beneficiary) assigned both the deed of trust and the promissory note to Mortgage Electronic Registration Systems Inc. (MERS); then MERS assigned the deed of trust to OneWest. CP at 48-50. Both assignments are recorded. *Id.* The document transferring the mortgage interest from MERS to OneWest does not mention the promissory note; it assigns only the deed of trust. However, OneWest's assistant secretary asserts in a sworn affidavit that OneWest "is the holder of the [promissory] Note, and the current beneficiary of record under the Deed of Trust. [OneWest] maintains control of the loan documents, including the original promissory Note." CP at 29. OneWest attached the promissory note to the affidavit. OneWest also asserts that its claim of possession is valid under article 3 of the Uniform Commercial Code, Title 62A RCW, which governs negotiable instruments. Erickson claims OneWest's assertions are not sufficient to prove it actually obtained or maintains physical possession of the promissory note.

---

[14]A promissory note represents the debtor's obligation to pay. The deed of trust secures a mortgage, which is a lien on the property functioning as security for the debtor's obligation to pay.

But even if we accept Erickson's claim that a party seeking foreclosure must prove it has both the deed of trust and promissory note to foreclose on a mortgage, we find that OneWest has met this burden. This case is distinguishable from many issues involving MERS litigation. This is not a case in which MERS itself is seeking to foreclose;[15] a separate bank, OneWest, was assigned the deed of trust and is pursuing foreclosure. Nor is this a case where the promissory note does not exist. And because OneWest initiated this case as a judicial foreclosure, the additional protections in the deeds of trust act, chapter 61.24 RCW, at issue in other cases do not apply. *Contra Bain*, 175 Wn.2d 83 (involving nonjudicial foreclosures); *Brown v. Dep't of Commerce*, 184 Wn.2d 509, 359 P.3d 771 (2015) (same); *see* RCW 61.24.030. Here, OneWest has produced the original promissory note. Its assistant secretary stated in a sworn affidavit that OneWest holds the promissory note and maintains control of the loan documents. Erickson provides no facts to dispute this evidence. Therefore, we reject Erickson's claim that OneWest does not hold the promissory note.

---

[15]This issue spurred litigation in a number of jurisdictions. *See* 2 BAXTER DUNAWAY, THE LAW OF DISTRESSED REAL ESTATE: FORECLOSURE, WORKOUTS, PROCEDURES § 24:20 (1985).

## IV. CONCLUSION

We reverse the Court of Appeals and hold that Washington courts are required to give full faith and credit to the Idaho conservatorship proceedings. OneWest is entitled to summary judgment and may proceed with foreclosure.

_Fairhurst, J._

WE CONCUR:

_Madsen, C.J._

_Gonzalez, J._

No. 91283-1

GORDON McCLOUD, J. (concurring)—I agree with the majority that

One West Bank FSB is entitled to summary judgment, and, accordingly, I concur. I

write separately, however, because I would not reach the question of whether the

Idaho court orders at issue in this case—the order appointing Shelly Bruna as

conservator and the subsequent order directing her to facilitate a reverse mortgage

of Bill McKee's Washington residence—are entitled to full faith and credit in

Washington.

## ANALYSIS

As the majority notes, the trial court resolved this case without addressing that

constitutional question. It concluded instead that OneWest was a bona fide

purchaser for value under Idaho statutory law. Majority at 9. Indeed, neither party

raised the issue of full faith and credit in the trial court—that issue was first

introduced into this case when the Court of Appeals issued its opinion. As the

majority explains, the Court of Appeals agreed with Erickson's arguments about

Idaho statutory law: it held that Idaho's probate code confers no authority on conservators to "encumber a nonresident's property outside of Idaho." Majority at 9-10 (citing *OneWest Bank, FSB v. Erickson*, 184 Wn. App. 462, 477, 337 P.3d 1101 (2014), *review granted*, 183 Wn.2d 1001, 349 P.3d 857 (2015)). But it did not end its analysis there. Instead, it went on to state that even if Idaho law *did* authorize such an encumbrance, Washington courts "are not bound by a foreign state's order concerning property here." *OneWest*, 184 Wn. App. at 479.

The majority properly rejects that conclusion because it misconstrues our precedent: a prior controlling decision of our court has clearly held that a foreign court order can lawfully *affect* interests in real property located here, provided the order does not actually *transfer title* to that property. Majority at 16-22. Neither of the orders at issue in this case transfers title; the Court of Appeals therefore erred by opining that they were unenforceable under our precedent. I concur completely in this portion of the majority's analysis.

I disagree, however, with the majority's decision to go on to hold that these orders are binding on our courts because of the full faith and credit clause. Majority at 23. Article IV, section 1 of the United States Constitution guarantees full faith

and credit to a state court's "final judgment."[1] It does not, however, extend that guarantee to orders that are interlocutory or subject to modification.[2] The problem in this case is that we can't tell whether the Idaho orders are final judgments or interlocutory orders subject to modification. Neither party ever presented the trial court with any "judgment" from the Idaho case. And, according to the Idaho District Court of Shoshone County docket sheet filed as part of the record in this case,[3] both of the orders relevant here (the "Letters of Conservatorship" appointing Bruna as conservator, Clerk's Papers (CP) at 18, and the "Order Directing [Bruna] to Facilitate a Reverse Mortgage of Property," CP at 108) issued in the middle of

---

[1] *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 231, 118 S. Ct. 657, 139 L. Ed. 2d 580 (1998) ("A final judgment in one state, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition through the land." (quoting U.S. CONST. art. IV, § 1)); *see Durfee v. Duke*, 375 U.S. 106, 109-10, 84 S. Ct. 242, 11 L. Ed. 2d 186 (1963) (every state must give the "judgment" of a court of another state "at least the *res judicata* effect which the judgment would be accorded in the State which rendered it"; "a judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment").

[2] *E.g.*, *Padron v. Lopez*, 289 Kan. 1089, 1101, 220 P.3d 345 (2009) (full faith and credit is not required when a decree is interlocutory or subject to modification under the law of the rendering state); *Bard v. Charles R. Myers Ins. Agency*, 839 S.W.2d 791, 794 (Tex. 1992) (full faith and credit not required when decree is interlocutory or subject to modification under the law of the rendering state).

[3] *In re Guardianship & Conservatorship of McKee*, No. CV-07-120 (First Dist. Ct., Shoshone County, Idaho).

litigation. CP at 99. It is possible that these orders are "final judgments"[4] for purposes of full faith and credit analysis. But it is possible that they are not. No record was ever developed on this question, no argument was made on this "final judgment" question, and no ruling was entered by the trial court on this question. The parties simply did not raise the issue of full faith and credit in the trial court. And because the Court of Appeals based its opinion entirely on what it called "ancient principles" prohibiting courts from affecting property interests in another state, *OneWest*, 184 Wn. App. at 479-80, the parties understandably limited their briefing on the full faith and credit issue, in this court, to those ostensibly ancient principles.

I would keep this court's holding within similar limits. I would reject, as the majority does, the Court of Appeals' assertion that foreign judgments can never "affect[]" property interests in our state. *Id.* But I would clarify that this conclusion is based on an analysis of the scope of the foreign court's jurisdiction or power to act, not on the full faith and credit clause—which concerns our own court's duty (or lack thereof) to honor such foreign court orders under the full faith and credit clause.

Indeed, I would make clear that the full faith and credit clause is not even relevant to the question presented here, i.e., whether OneWest was entitled to rely

---

[4] *Baker*, 522 U.S. at 231.

4

on those orders. I would therefore go straight to the issue of whether OneWest is a bona fide purchaser. No decision on whether the orders are *actually* entitled to full faith and credit is needed to answer that question. Instead, we need only analyze what constitutes a bona fide purchaser under Idaho law.

That analysis shows that Idaho statutory law protects OneWest as a bona fide mortgagee. The reason is that, as the majority notes, in the trial court the parties disputed an Idaho conservator's *statutory* authority to affect a nonresident's out-of-state property. Majority at 5-8. The trial court ruled in favor of OneWest on this issue, rejecting Erickson's arguments that the reverse mortgage exceeded the jurisdictional limits of Idaho's probate code. *See* CP at 60 (Mem. in Opp. to Pl.'s Mot. for Summ. J.) (arguing that OneWest's predecessor should have known that Idaho statutes do not confer "authority [on] a conservator appointed in Idaho to transfer real property interests in Washington purportedly belonging to a Washington resident"). The trial court was correct. Even if we accepted Erickson's argument that the conservator lacked actual statutory authority to encumber McKee's out-of-state property because he was not an Idaho resident, Idaho conservatorship law would protect OneWest's interests as a bona fide mortgagee anyway. That law specifically protects third parties who deal with conservators, even in situations when the court may have lacked jurisdiction:

5

A person who in good faith either assists a conservator or deals with him for value in any transaction other than those requiring a court order as provided in section 15-5-408 of this Part, is protected as if the conservator properly exercised this power. The fact that a person knowingly deals with a conservator does not alone require the person to inquire into the existence of a power or the propriety of its exercise, except that restrictions on powers of conservators which are endorsed on letters [of conservatorship] are effective as to third persons . . . . The protection here expressed extends to instances in which some procedural irregularity or jurisdictional defect occurred in proceedings leading to the issuance of letters [of conservatorship].

IDAHO CODE § 15-5-423.

## CONCLUSION

I would reverse the Court of Appeals' decision and affirm the trial court's decision to grant summary judgment to OneWest on the basis that it is a bona fide mortgagee under Idaho statutory law. I would not reach the question of whether the orders at issue in this case are final judgments entitled to full faith and credit. In this way, I would avoid reaching a constitutional question that was neither argued in the trial court nor thoroughly briefed on appeal. I therefore respectfully concur.

Gordon McCloud, J.

Spearman, J.P.T.