FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JAN 29 AM 9: 31

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>TODD A. PORTER,<br><br>　　　　　Respondent,<br><br>　　　and<br><br>MICHELE T. PORTER,<br><br>　　　　　Appellant. | DIVISION ONE<br><br>No. 76067-0-I<br><br>UNPUBLISHED OPINION<br><br><br><br><br>FILED: January 29, 2018 |

DWYER, J. – The superior court was asked to calculate the percentage of Todd Porter's military retirement pension owed to Michele Porter by giving effect to a dissolution decree entered in a Florida circuit court in 2003. The superior court entered an order calculating the percentage due to Michele.[1] It is from this order that Michele appeals.

We conclude that the superior court did not err in its reading of the dissolution decree or its corresponding arithmetic calculation. We affirm.

---

[1] For ease of reference, the parties are referred to by their first name.

I

Todd and Michele were married in January 1989. They separated in June 2001. Before, during, and after their marriage, Todd served in the United States Navy and earned a military pension.

On July 17, 2002, while still serving in the Navy, Todd submitted a petition for dissolution of marriage to the Duval County Circuit Court in Florida. On April 15, 2003, after a three-day bench trial, the Florida court issued a final judgment of dissolution of marriage. As part of its decree, the court awarded Michele a percentage of the value of Todd's anticipated military pension. The decree's military pension provision read:

> The Court assigns to the Wife, and the Wife shall be the owner of, an interest in the marital portion of the Husband's gross disposable retirement pay from the United States Navy. The Wife is hereby determined to be entitled to receive a *pro rata* share of those military benefits accruing to her as of July 17, 2002, the date on which this dissolution of marriage was filed, based upon the Husband's rank at the time of filing of O-4 and his rate of pay of O-4 with over fifteen years of service, based upon a fraction the numerator of which is the duration of the marriage during the Husband's creditable military service (150 months) and the denominator is the total of the Husband's months of creditable military service, divided by two plus her percentage share of cost of living adjustments.

In August 2003, Michele unilaterally sought and obtained an order from the Florida circuit court assigning Todd's military pension that contained language different from that set forth in the dissolution decree. In 2005, the parties agreed to a consent order amending the August 2003 order to correspond with the original language of the dissolution decree.

On January 1, 2009, Todd retired from the Navy after nearly 22 years of military service. He was credited with 262 service months applicable to his pension benefit.

Shortly thereafter, the parties sought to obtain a division of property award for Todd's military pension from the Defense Finance and Accounting Service (DFAS). DFAS responded that it could not issue the division of property award due to the wording of the 2005 amended order. By way of explanation, DFAS stated that the 2005 amended order provided "for a division of retired/retainer pay by means of a hypothetical amount of retired pay as of the time of divorce" but did "not provide enough information to calculate the amount of the hypothetical retired pay."

Thereafter, neither party immediately sought to resolve the military pension division. By the summer of 2013, both parties had relocated from Florida—Todd had moved to Maryland and Michele had moved to Washington. In June 2013, Todd registered the 2005 amended order as a foreign judgment in the King County Superior Court.

After negotiations between the parties failed, Todd submitted a "Motion/Declaration for Correction to a Military Retirement Order" to the superior court. As part of the proceeding, the parties stipulated that they would divide the pension according to the dissolution decree. Todd retained an accountant who calculated that Michele was entitled to 16.28 percent of his military pension. Todd submitted this calculation to Michele but received no response.

Thereafter, Todd petitioned the superior court to enter an order finding that, based on the dissolution decree and his accountant's calculations, Michele was entitled to 16.28 percent of Todd's military pension. At a special setting, both parties presented to the superior court their reading of the dissolution decree and their calculations of the benefits due.

The superior court determined that the decree was unambiguous, adopted Todd's calculation methodology, and entered an order finding that Michele was entitled to 16.28 percent of Todd's military pension.[2]

II

Michele contends that the superior court did not give full faith and credit to the military pension provision set forth in the Florida circuit court's dissolution decree. We disagree.

A

We review de novo whether the superior court accorded full faith and credit to a foreign judgment. Brown v. Garrett, 175 Wn. App. 357, 367, 306 P.3d 1014 (2013) (citing SCM Grp. USA, Inc. v. Protek Mach. Co., 136 Wn. App. 569, 574, 150 P.3d 141 (2007); Tonga Air Servs., Ltd. v. Fowler, 118 Wn.2d 718, 725, 826 P.2d 204 (1992)).

> Under the full faith and credit clause of the United States Constitution, a judgment rendered by one state is entitled to recognition in Washington. U.S. CONST. art. IV, § 1 ("Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state."); State v. Berry, 141 Wn.2d 121, 127-28, 5 P.3d 658 (2000); Williams v. S.S. Mut. Underwriting Ass'n, 45 Wn.2d 209, 213, 273 P.2d 803 (1954); Idaho Dep't of Health & Welfare v. Holjeson, 42 Wn. App. 69, 70,

---

[2] Michele later moved for reconsideration, which was denied.

708 P.2d 661 (1985). " 'The Full Faith and Credit Clause provides a means for ending litigation by putting to rest matters previously decided between adverse parties in any state or territory of the United States.' " Berry, 141 Wn.2d at 127 (quoting In re Estate of Tolson, 89 Wn. App. 21, 29, 947 P.2d 1242 (1997)).

Brown, 175 Wn. App. at 366.

Consequently, a party seeking to collaterally attack a foreign order may do so " 'only if the court lacked jurisdiction or constitutional violations were involved.' " OneWest Bank, FSB v. Erickson, 185 Wn.2d 43, 56, 367 P.3d 1063 (2016) (quoting Berry, 141 Wn.2d at 128). "Otherwise, a Washington court 'must give full faith and credit to the foreign judgment and regard the issues thereby adjudged to be precluded in a Washington proceeding.' " OneWest Bank, 185 Wn.2d at 56 (internal quotation marks omitted) (quoting Berry, 141 Wn.2d at 128).

Neither party contests that the Florida circuit court had jurisdiction over the dissolution proceedings. Nor does either party present argument that the dissolution decree was entered in a manner constituting a constitutional violation.

Given that, the full faith and credit clause precludes Washington courts from inquiring into the dissolution decree's " 'merits . . . , the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based.' " OneWest Bank, 185 Wn.2d at 59 (quoting Milliken v. Meyer, 311 U.S. 457, 462, 61 S. Ct. 339, 85 L. Ed. 278 (1940)). This is so even if the court order was mistakenly entered in violation of the sister state's statutory or judicial authority. Berry, 141 Wn.2d at 127; In re Estate of Storer, 14 Wn. App. 687, 690, 544 P.2d 95 (1975).

Accordingly, the principles of comity inhering in the full faith and credit clause require that we recognize and give effect to the dissolution decree entered by the Florida circuit court, regardless of whether the decree properly reflects Florida law.

B

"Under the full faith and credit clause, a state is required to enforce the judgment of sister states." OneWest Bank, 185 Wn.2d at 64. Enforcing a foreign judgment requires the court tasked with enforcement to read and understand the judgment sought to be enforced. It may also require the court to engage in fact-finding in order to effectuate the judgment.

The parties herein requested that the superior court enforce the Florida dissolution decree by determining the percentage of Todd's military retirement pay that was owed to Michele. In order to determine this percentage, the superior court reviewed and sought to understand the military pension provision of the dissolution decree. Upon its review, the superior court found that the plain language of the dissolution decree meant "that the denominator of the coverture fraction should be the number of months of creditable service on the date of the Petitioner's [Todd's] retirement."

We conclude that the superior court properly understood the dissolution decree. Notably, the decree indicated that the numerator was 150 months but left the denominator unspecified as "the total of the Husband's months of creditable military service." As an initial matter, the decree's use of "total" suggests that the denominator was the total number of months of creditable

military service that Todd had spent in the Navy at the time of his retirement, rather than Todd's total creditable months of Navy service at the time of the separation filing.

Moreover, that no specific number was set forth as the denominator suggests that the denominator was unknown to the parties when the decree was entered—otherwise, the decree would, presumably, have set forth a specific number for the denominator, as was done with the numerator. This suggests that the denominator was Todd's total months of creditable military service as of his retirement. Indeed, when the decree was entered, Todd had not yet retired from the Navy and that number was thus unknown to the parties at the time.

This understanding of the decree's military retirement pension provision is consistent with the interpretation of a similarly worded decree in Johnson v. Johnson, 162 So.3d 137, 138 (Fla. Dist. Ct. App. 2014), a decision by a Florida appellate court. In Johnson, the court considered the meaning of a military retirement pay provision in a marital settlement agreement. The court read the agreement and determined that, regarding the ex-wife's marital portion,

> [t]he amount was to be calculated with the following formula set forth in the agreement:
>
> $$\frac{1}{2} \times \frac{10 \text{ years (term of marriage)}}{(\textit{total number of years of creditable United States Naval Service})}$$

Johnson, 162 So.3d at 138 (emphasis added). Upon review of this language, the Florida appellate court concluded that "[t]he terms of the Consent Final Judgment were *unambiguous*. All that was left for the trial court to do was determine the former husband's total number of years of military service to complete the

fraction, and then perform the mathematical calculation." Johnson, 162 So.3d at 138 (emphasis added).

Given our interpretation of the pertinent language of the decree and its alignment with a Florida appellate court's interpretation of substantially similar language, we conclude that the superior court did not err in its reading of the decree.[3]

C

Having properly understood the meaning of the decree, the superior court was next tasked with finding a specific fact—the percentage of Todd's military retirement pension owed to Michele. The superior court adopted Todd's proposed calculation and found that Michele was entitled to 16.28 percent of Todd's military retirement pension.

This arithmetic calculation is supported by substantial evidence. Accordingly, there was no error.[4]

---

[3] Michele contends that the superior court erred because full faith and credit required the superior court to interpret the decree in accordance with Florida law, relying on In re Marriage of Gimlett, 95 Wn.2d 699, 704-05, 629 P.2d 450 (1981), In re Marriage of Chavez, 80 Wn. App. 432, 435-36, 909 P.2d 314 (1996), and McGill v. Hill, 31 Wn. App. 542, 548, 644 P.2d 680 (1982), in claimed support for this proposition. However, none of these decisions analyzed a foreign judgment in the context of the full faith and credit clause. Accordingly, Michele's reliance is unavailing.

Michele next relies on an amendment to the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408. But Michele's appellate briefing concedes that this prospective amendment becomes effective in the year 2018, more than 15 years after the dissolution decree here at issue was entered in the Florida circuit court.

[4] Michele requests an award of attorney fees arising from the litigation in this matter. The parties spar over whether legal authority exists to support such an award. We need not resolve the debate given that, were we to possess discretion to enter such an award, we would decline to do so.

Affirmed.

We concur: